Me. Justice VanValkenburgii
delivered the opinion of the court.
This was an indictment found in pursuance of sections 4 and 5 of chapter 8 of “an act to provide for the punishment of crime and proceedings in criminal cases,” approved August 6th, 1868, which sections read as follows:
“Section- 4. Whoever, having a former husband or wife living, marries another person, or continues to cohabit with such second husband or wife in this state, shall (except in the cases mentioned in the following section,) be deemed guilty ’ of polygamy, and be punished by imprisonment in the State Penitentiary not exceeding five years, or in the county jail not exceeding one year, or by fine not exceeding five hundred dollars.
“Sec. 5. The provisions of the preceding section shall not extend to any person whose husband or wife has been continually remaining beyond sea, or has voluntarily withdrawn from’'the other and remained absent for the space of three years together, the party marrying again not knowing the other to be living within that time, nor to any person legally divorced from the bands of matrimony, and not the guilty cause of such divorce.”
The first assigned error is in permitting certain letters from H. D. D. Twiggs to Asa Ambrister, a witness for the prosecution, to be read in evidence to the jury.
Asa Ambrister was a witness for the State on the trial of the plaintiff in error. -Among other things he testified, “I was present at the marriage of J. C. Gallaher, the defendant, to Mary A. Ambrister; I heard the ceremony performed, and defendant accepted her as his wife; they were married on the 23rd of October, 1851; I know the defendant; he is the same man; his wife has lived with me since 1863; the defendant was in the Confederate service, lost his prm at the seige of Vicksburg, returned to his family after the surrender of Vicksburg, and remained until the Federal army took possession of East Tennessee, which was but a short time. He returned in 1866 Bon after the final surrender; he had lost all and had no means and nothing to do; defendant Baid if he had Borne means, lie would go where he could get business and provide a home for his family; hiB wife was willing, and I and my neighbor, Lenoir, indorsed his note in bank for some money and he went away; kept writing back from Alabama that he was ’unable to provide a home for his family for a year or. more. Then he moved'* to Macon, Georgia, and continued the cor *101 respondence until 1871, when I received a letter from one Judge Twiggs.”
Here follows in the bill of exceptions a statement in these words, “which letter, with a number of other letters from Judge Twiggs to witness, was introduced as evidence, to which testimony defendant’s counsel objected. The court understanding the defendant to oppose the objection made by his atorney, permitted the letters to be read to the jury, to which action of the court defendant’s counsel then and there excepted, and the exception noted.”
The first letter, which was then read in evidence to the jury, was as follows:
“SANDERSVILLE, ‘WASHINGTON Co., Gav
December 28, 1870.
“Mr. Asa Ambrister:
“My Dear Sirs I take the liberty to write you a few lines in-order to obtain some definite information witji regard to'the circulntion of various reports against the character of Maj. J. 0. Gallaher, who resides in this place, and is engaged in the practice of law. This man has long since been regarded by the people of this place with distrust and suspicion,” &c.
The remainder of the letter is filled' with charges against the character of the defendant Gallaher, not properly admissible in evidence, and tending only to prejudice the mind of the jury against him.
Three other letters of the Same character and equally objectionable, purporting to be written by H. D. D. Twiggs to the witness, Ambrister, were also, read in evidence to the jury. There was no proof of the genuineness of either of the letters, had they not been otherwise objectionable, other than in the testimony of Ambrister above quoted. It is true, that after they were so read to the jury and on the commencement of his subsequent examination, he testified, “After receiving these letters, I consented to go to Sandersville as a witness against defendant.”
This* cannot be taken as sufficient proof of the letters, ' even if ‘they were otherwise admissible, to warrant their introduction as evidence. But they were mere hearsay, irrelevant and immaterial to the issue, in no way tending to prove the first marriage of Gallaher, as is suggested on the part of defendant in error, or any other fact, but on the contrary, having the effect to prejudice the case • of the prisoner with the jury. They were not even proven to be in the handwriting of Twiggs, who, it is claimed, wrote them.
In a subsequent part of the bill of exceptions is the following statement:
“State vs. Gallaher.
“It is hereby noted that the prisoner’s counsel objects to the introduction by the State of the evidence of Ambrister to the following effeot, that he went to Sandersville, Geo., in 1871, as a witness for the prosecution against defendant, in a charge- of living with a woman as his wife while his first . wife was still living, and that the defendant was mobbed while there and shot, and that he, Ambrister, protected him and carried him in a hack to Macon, and that Judge Twiggs and others told him that defendant had been living in adultery with a woman in Sandersville and passed her off as his wife. Also, that defendant had borrowed money from him and not paid it back- on his leaving Tennessee in 1865.
“It is also noted that defendant’s counsel objected to the introduction of the letters of Judge Twiggs offered in evidence by the State, said letters being here noted as received in evidence,, and that the defendant’s counsel further grayed that these exceptions be noted by the judge on the trial of 379 cause.
“(Signed) Wilkinson Call,
“For Prisoner.
“The above exceptions are hereby noted and allowed, but it is stated here on.the record that when the defendant’s counsel made the exception last stated, the prisoner, as the court understood him, objected to the exclusion of this evidence, and the same not’ being urged thereafter the court did -not rule on the subject, but the evidence was allowed to be stated to the jury.
“Wilkinson* Call,
“For Prisoner.6
“Exceptions noted and allowed Dec. 12, 1878.
“W: Bryson, J. 3d J. C.”
This paper, which seems to have been filed by the counsel for the prisoner, bears date on the 12th day of December, after the trial had been concluded on the 11th. If this was the only exception taken, under our previous decisions, referred to by the Attorney-General, it would not .be available to reverse this judgment. This court has frequently held that exceptions, to be available on an appeal or writ of error, must be taken during the trial; to evidence, when offered; to the charge of the court, when made, and before the jury leave their seats to consider of their verdict. The bill of exceptions is a simple history of the case as tried, and should contain nothing more nor less than the facts as they appeared to the court and jury, from the commence- ■ ment of the trial until the final, judgment by the court.
All objections, rulings by 'the court, and exceptions should appear in the body of the bill of exceptions, in their proper and appropriate place, and will not be considered. if upon separate pieces of paper filed subsequent to the .verdict, or in cases of motion for new trial, or in arrest of judgment after final judgment. (Coker & Scheiffer vs. Hayes, 16 Fla., 368; Story & Sullivan vs. State, Ib., 573.) See Eule 103 of “Eules of Circuit Court in Common Law Actions,” where a proper form for a bill of exceptions is given.
In this caso, however, it appears that the introduction of these letters was objected to at the proper time, and the bill of exceptions shows that they were permitted to be read'to the jury and' that an'exception was taken. vIt is tfue that the judge says that “understanding the defendant to oppose the objection made by his attorney, he permitted the letters to be read,” at the same time and in the same sentence certifying .“to which action of the court defendant’s counsel then and there excepted, and the exception noted.” This- action of the defendant’s counsel, who was conducting the case, negatives the idea that the objection was either waived or withdrawn. An exception was distinctly taken and placed on the record.
The second, third and fourth assignments of error relate to the evidence of Ambrister on the trial. There appears to have been no objection made or exception taken to the introduction of that evidence at the time it was offered, but on a subsequent day, after verdict, an exception was filed, by which it appears that the defendant’s counsel first objects to such evidence. Under repeated decisons of this court, this objection and exception*is entirely too late,-and cannot be made available for the purpose of reversing this judgment.
The fifth and' sixth assignments of error allege that the court erred in two specific propositions in his charge to the jury, but no exceptions were properly taken or noted.
The eighth error assigned is, that the record does not show that the grand jury presented to.the court the indictment, or any indictment, for the offence with which the defendant was charged.
This error is here assigned for the first time in this case. , No notice of it was taken in the court below. It was not *102 made a ground in arrest of judgment, and does not appear 'by anything in the record to have been raised or considered. The certified transcript of the indictment attached to the record is endorsed in due form, “State of Florida vs. J. C. Gallaher, Polygamy. A true bill, May 1, 1878. J. P. Morgan, foreman. Filed in office this the 1st day of May, A. D. 1878. Pob’t A. Beid, Clerk of the C. C.” The prisoner was arraigned, plead not guilty, and was tried. Our court has held in a like case that it was too late to malee the objection for the first time here. Such must be held to be the rule. (Francis vs. State, 6 Fla., 306; Moore vs. State, 35 Ala., 431.) See also Collins vs. State, 13 Fla., 651, where the question is fully discussed.
In view of the fact that the letters from Twiggs to Am-brister were improperly admitted and read in evidence, a new trial must be awarded.