CHARLES TILLY, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. In an indictment under Chapter 3463, Laws 1883, it is not necessary to charge that the entry was "burglariously," nor is it necessary to allege the ownership of the building in any particular individual. The crime is a statutory one.

2. Offences prescribed and defined by a statute must be charged in the language of the statute, or in language equivalent thereto.

3. An indictment endorsed on the back in printing, with words, "A true bill," which endorsement is signed by the foreman of the grand jury, as such foreman, is a compliance with the statute in that respect.

4. A new trial will not be granted because of the admission of immaterial or illegal evidence to prove a fact which is fully established by other and legal evidence in the cause, it being clear that the verdict was not influenced by such illegal evidence.

5. The exclusive possession of the stolen property by the prisoner soon after the theft is sufficient, when standing alone, to put him upon explanation, and if he fail to make explanation, then to warrant the jury in finding him guilty of the larceny.

Writ of Error to the Circuit Court for Marion county.

The facts of the case are stated in the opinion.

*Miller & Spencer* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

MR. JUSTICE VANVALKENBURGH delivered the opinion of the court:

In the month of March, A. D. 1884, Charles Tilly, the plaintiff in error, was indicted by the grand jury of Marion county under Chapter 3463, Laws 1883, which reads as follows: "Whoever breaks and enters, or enters without breaking, in the day time or night time, or enters in

the night time without breaking, a building, ship, or ves-sel, with intent to commit a misdemeanor, shall be pun-ished by imprisonment in the State prison for not more than one year, or by fine not more than five hundred dol-lars." The indictment alleged as follows: " That Charles Tilly   *   *   *   with force and arms, at and in the county of Marion aforesaid, a building, to wit: a meat house of one Nancy Osteen, feloniously and willfully did enter with-out breaking, with intent, the goods, chattels and property then and there being of less than the value of twenty dol-lars, to take, steal and carry away," &c.

This indictment was endorsed in printed words: " A true bill," and beneath these words was signed in writing " Francis E. Harris, Foreman."

Counsel for Tilly moved to quash this indictment for these reasons.

1st. Because the entry is not alleged to have been done burglariously.

2d. The entry is alleged to have been done feloniously.

3d. The ownership of the property in the said house is not alleged.

4th. The indictment does not upon its face show that the entry was into such a building as is contemplated by the statute.

5th. It is not alleged that the said entry was committed in the day time or in the night time.

6th. Because the indictment is not endorsed "a true bill," in writing and signed by the foreman of the grand jury; but is endorsed with the words " a true bill," in printing, and signed simply " Francis E. Harris, Foreman,"

This motion was overruled by the court and the defend-ant excepted.

A jury was empanelled, the defendant tried and a ver-dict of guilty rendered. Counsel for defendant then moved

for a new trial, which was denied, and the defendant duly excepted. The defendant was sentenced by the court and his counsel bring this writ of error.

The errors assigned in this court are as follows:

1st. The court erred in overruling the motion to quash the indictment.

2d. The court erred in permitting the question, " why did you go to Charles Tilly's house to look for your meat ?" to be asked of the witness Nancy Osteen, the defendant objecting to the question on the ground that it tended to elicit hearsay and conjectural testimony.

3d. The court erred in refusing to give the first, third and fourth instructions requested by defendant's counsel.

4th. The court erred in overruling the motion for a new trial and in arrest of judgment.

5th. The court erred in permitting the answer of Nancy Osteen to the question propounded by the State's Attorney, to wit: " Why did you go to Charles Tilley's house to look for your meat ?" to go to the jury, and to be considered by them as evidence, the said question being objected to as tending to elicit hearsay and conjectural testimony, and the said witness answering that she (the witness) went to prisoner's house because other persons had told her the meat was there, i. e., in the prisoner's house.

Offences prescribed and defined by the statute must be charged in the language of the statute or language equivalent. This rule has long been established and frequently announced by this and other courts. McGahagin vs. The State, 17 Fla., 665 ; People vs. Lewis, 61 Cal., 366 ; Stevens vs. State, 18 Fla., 904 ; Schmidt vs. State, 78 Ind., 41 ; Jones vs. State, 12 Texas Ct. Ap., 424.

The statute under which this indictment was found describes the whole offence, and the indictment charges the crime in its very words. It is not necessary for the indict-

ment to have alleged the offence to have been done burgla-riously, nor does it render it invalid to charge that it was done "feloniously and willfully." Tully vs. Commonwealth, 45 Mass., 357.

. The statute does not make the offence burglary, and it is not treated as such ; it is made a felony, punishable as a felony, for breaking and entering, or entering without breaking, in the day time or night time, with intent to commit a misdemeanor. It is not necessary to allege the ownership of the property in any particular individual. The charge is of willfully entering a building, to wit : a meat house of one Nancy Osteen. In cases for burglary it has been held that it would be sufficient to lay the owner-ship of the house in a married woman, who lives apart from her husband and has the occupancy and control of it Ducher vs. The State, 18 Ohio, 308. In this case Nancy Osteen testified that she was a married woman ; that the meat house belonged to her husband, Allen Osteen. " He left me more than a year ago, and has not lived with me since. I have several children and we get our support from this property. I have had control and use of the property and the house the meat was taken from since he left me."

The indictment is properly endorsed. It makes no dif-ference that the words, " a true bill," are printed, if ap-pended thereto is the signature of the foreman of the grand jury. In this case the signature was so appended. Galla-her vs. The State, 17 Fla., 370.

The indictment charges that the offence was committed on " the twenty-eighth day of February, in the year of our Lord one thousand eight hundred and eighty-four." This is a sufficient designation of the time under the statute. 12 Metcalf, 240. This statute was evidently enacted by the Legislature to fill a want of proper laws to punish such

breaking and entering with intent to commit a misdemeanor made apparent by the decision in Wood vs. The State, 18 Fla., 967. The court did not err in refusing to quash the indictment.

The next error assigned is that the court erred in permitting the State's Attorney to ask the witness, Nancy Osteen, "why did you go to Charles Tilly's house to look for your meat?" Defendant's counsel objected to this question upon the ground that it tended to elicit hearsay and conjectural testimony. Another error is assigned in connection with this, viz.: in permitting the answer to this question to go to the jury. The answer to the question was, "because other persons had told me that the meat was there." Mrs. Osteen testified in relation to the meat which was alleged to have been taken, as follows: "There was thirty-six pounds of meat gone; the meat was worth fifteen cents a pound. I went to Charles Tilly's house the next day with the officer who executed the search warrant and found the meat in his house." The question was then asked by the State's Attorney: "Why did you go to Charles Tilly's house to look for the meat?" This question was objected to as is stated in the assigned error above, the objection was overruled, and an exception was taken. The witness answered as is above stated. To this answer the record does not show that any objection was made or exception taken. She further testifies: "The officer who searched the house found meat locked up in the house. I was present. I know it was my meat." The question asked was not objectionable, and it was not error in the court below to admit it. It does not follow from it that it would "elicit hearsay or conjectural testimony." The witness may have seen the defendant in some suspicious position with reference to her meat house, or seen his tracks leading towards his house, or found other evidence to satisfy herself

in what particular direction her meat had been taken. Nor can we conceive how the answer to the question, even if it had been properly objected to, could, in any event, injure the defendant. The witness, accompanied by an officer with a search warrant, went to Tilly's house the next day after the meat had been taken and found her meat there. It makes no difference by what means she came to the conclusion that the offence had been committed by the defendant; she took the proper course to discover where her property was, and found it. The offence was in getting into the meat house and taking the property therefrom. The evidence in her answer to the question so asked could, in no way, imperil the rights of the defendant and he was not injured by it. It is a well settled rule that "a new trial will not be granted for the admission of illegal evidence to prove a fact which is fully established by other and legal evidence in the cause, it being clear that the verdict was not influenced thereby." Lynes vs. the State, 36 Miss., 617.

The other alleged errors relate to the refusal of the court to charge the jury as asked by the counsel of the defendant, as follows:

"1st. The jury must be satisfied that the meat house from which the meat is said to have been stolen was the meat house of Nancy Osteen; if on the contrary you find that the meat house was the property of Allen Osteen, the husband of Nancy Osteen, you will find the defendant not guilty."

2d. The court did not err in refusing this charge. Nancy Osteen was in possession and actual occupation of the meat house. It is not necessary to allege the ownership of the property under this statute in any particular individual. If it were necessary, we are inclined to think that the person in the occupancy and control of the premises at

the time the offence was committed, the actual owner of the property made the subject of the larceny, may be set out in the indictment as the owner, and that a *feme covert* separated and living apart from her husband, taking care of her children, for such purpose may be treated as a *feme sole*. It is not, however, necessary to decide this particular question here, as the statute under which this indictment was found does not make the offence burglary, as we have said above.

" 3d. The indictment is for entering without breaking with intent to commit a misdemeanor. If the proof is that the house was both broken and entered, then the defendant ought not to be convicted under this indictment. A breaking under the law is committed if a latch were lifted or pulled aside and a door opened."

There was no error in the court thus declining to charge. The offence consists in breaking and entering, or entering without breaking in the day time or night time, or entering in the night time, " with intent to commit a misdemeanor." The punishment affixed to either or all of these offences is the same. The statute practically abolishes the distinctions between the breaking and entering, and entering without breaking, the intent being to commit a misdemeanor.

"4th. Where burglary is connected with larceny, mere possession of the stolen goods, without any other evidence of guilt, is not to be regarded as evidence of the burglary unless there is other evidence of guilty conduct."

No burglary was charged against the defendant in the indictment. He was alleged to have committed an offence not known as burglary, but made by statute, to punish a misdemeanor, committed in a particular manner. The strict forms and rules which apply to the commission of the crime of burglary at common law, are not necessarily

binding in this statutory crime. The court is not bound to go outside of the very case, and instruct the jury upon questions of law foreign to it. The facts as they appear in evidence, and the circumstances, are to go to the jury, which is made by law the forum to determine the guilt or innocence of the accused. The court cannot charge the jury what evidence they shall consider, and what they shall refuse to consider. All that bears upon the case, when properly admitted by the court, and not expressly taken from their consideration, must enter into the reasons of their verdict. In this case the defendant introduced no evidence. The property was found locked up in his house the day after the larceny. He did not attempt or offer an explanation of such possession.

Had he introduced such evidence as would have given a reasonable account of such possession, the burden of proof would have been upon the State to show that such evidence was false. "It is well settled law that the exclusive possession of the whole or some part of stolen property by the prisoner recently after the theft is sufficient, when standing alone, to cast upon him the burden of explaining how he came by it, or of giving some explanation, and if he fail to do so, to warrant the jury in convicting him of the larceny."

And it is further settled that if the "property was shown to have been taken by burglary or robbery, such possession unexplained is sufficient also to warrant a conviction of those crimes." Commonwealth vs. McGorty, 114 Mass., 299; State vs. Hogard, 12 Minn., 293; Knickerbocker vs. The People, 43 N. Y., 177; See State vs. Hodge, 50 N. H., 510.

The evidence authorizes the finding of the jury and the judgment must be affirmed.