MOSES BEAUREGARD SELPH, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. The witness' state of mind and interest in respect to the prisoner are always pertinent inquiries and should be considered by the jury in weighing the evidence of the witness.

2. Counsel for prisoner has a right to ask a witness for the State on cross examination, if he had not taken part in an indignation meeting against the prisoner, and if he had not pledged himself to do all he could to convict the prisoner, to show whether or no the witness was hostile to the prisoner.

3. The asking of such question by the prisoner, and an affirmative answer as to taking part in the indignation meeting, will not justify the court in permitting the witness to state the reason for calling such meeting and testifying as to difficulties between the prisoner and other persons, wholly disconnected with the charge for which prisoner was on trial and which were calculated to seriously prejudice the jury against the prisoner.

4. Counsel for the prosecution in a criminal case are not bound to introduce all the witnesses who were present at the time of the commission of the offence.

5. The presiding judge has a right in the exercise of a sound discretion to call a witness either for or against the prisoner, and when so called and questioned by the court to permit both sides to cross examine him.

Writ of error to the Circuit Court for Suwannee county.

MR. JUSTICE RANEY was absent when the opinion in this case was delivered.

The facts of the case are stated in the opinion.

*White & White, J. N. Stripling, B. H. Palmer* and *A. J. Henry* for Plaintiff in Error.

*The Attorney-Geneoal* and *C. R. King* for Defendant in Error.

THE CHIEF-JUSTICE delivered the opinion of the court:

The plaintiff in error, Moses Beauregard Selph, was convicted in the Circuit Court of Suwannee county for the murder of Wilson M. Kirkland. In the course `of the trial one W. E. Robinson was introduced as a witness for the State. In his cross examination he stated as follows: " Myself and the defendant were friendly ; myself and old man Selph were not friendly some time ago, but are now ; nothing between me and Bogue ; I didn't pledge myself to do all I could to convict Selph ; *I took part in indignation meetings in Lake City;* don't remember of threats of driving the Selphs from the county ; at the the time of shooting, Jones, Bob, Bogue, Kirkland and old woman, negro Milly, were in sight ; saw no one else ; saw no one over street ; saw no one in street ; negro at my market in front ; I left her there ; don't know that she came nearer ; don't know of a committee having been appointed to prosecute the Selphs ; I don't remember pledge made by me and others to convict Selphs ; resolutions were passed in indignation meetings ; I didn't attend night meetings ; I think the resolutions of the day meetings were published ; I didn't offer to join mob to hang Selph ; was not invited to do so ;

JUNE TERM, 1886. 539

Moses Beauregard Selph v. The State of Florida—Opinion of Court.

I know of talk of mob to lynch Selph, when he was arrested and brought back to Lake City by the Sheriff."

Re-direct. "The meeting that I attended was a meeting of the citizens to understand about the prosecuting and backing officers, and as to seeing the law executed. This murder was the immediate cause of this meeting, this and the riot that evening before the killing, in which they were engaged."

Question. "What was the reason and purpose of the public meetings you attended, and what was your reason and purpose in attending those meetings?" Objected to by counsel for the defendant; objection overruled and exception taken.

Answer. "My reason for attending that meeting was, that I was invited there by the leading citizens of the county and town for the purpose, as explained to me, of forming some resolutions as to what steps shall be taken to do away with the riotous proceedings of the Selphs on that day before the killing. The reason, as I understood, was about the conduct of the Selphs."

Question. "What conduct of Selphs do you refer to?" Objected to by counsel for the defendant; objection overruled and exception taken.

Answer. "It was what they did the day of the killing and before."

Question. "What was the conduct of the Selphs that day to which you allude?" Objected to by counsel for the defendant; objection overruled and exception taken.

Answer. "On the day of the killing I was told that the two Selphs, Duval and Bogue, father and son, had fired 12 or 15 shots at two men on the street, while riding through town; (I was not in town at the time) that they came very near killing them, and that they had endangered the lives of women and children; that one ball came near striking

a lady in Baya's store door; and there had been difficulty after difficulty since they had been citizens of the place. It was thought by the people that most of the difficulties were originated by them, and that they thought it was time to put a stop to it. It seemed the officers were not doing their duty from some cause, and that we would all come together and see that the officers did their duty, and pledge to aid and assist them in doing their duty, if necessary, and not to allow money to run our town and people any longer, as explained to me. That was the object and cause of my attending this meeting. I agreed with the parties that it was time that some steps were taken, that we might be able to have a quiet town and less fusses, and might be able to have immigrants come to our place, thinking of the past condition of affairs that our town would no longer prosper."

Re-cross. "I was not told that the men that the Selphs shot at shot at them first. I was told afterwards that one of these parties rode by Selph's house and drew his pistol, but did'nt hear that he presented his pistol at Mrs. Selph; I never heard this before I heard White; I heard that one of the parties rode by Selph's house and waved pistol in Selph's wife's presence; don't remember anything being said in this meeting about this riding. No meeting was held till after the killing of Kirkland. I have not actively aided in this prosecution. I was invited and talked to by several. J. E. Young, King, Baya and Sheffield got up this meeting. If any of them were Selph's enemies I don't know it."

This evidence, we think, was clearly illegal, and the objection of the prisoner thereto should have been sustained. It is true that the first allusion to the indignation meeting was made by the witness on his cross-examination by the defendant's counsel. It is not clear from the record

whether it was in reply to a question of the prisoner's counsel, or whether it was a voluntary statement, this portion of the evidence being in the style of narration; but whether it was drawn from the witness by a question, or he volunteered the statement, it did not justify the court in permitting evidence as to why such meeting was held. The evidence could have been elicited by the defence for but one purpose, and that was legitimate to show the state of feeling of the witness towards the prisoner. If witness was hostile to prisoner it was proper that it should be considered by the jury in weighing his evidence.

The witness' state of mind and interest in respect to the prisoner are always pertinent inquiries, for they go to his credit. 16 Mass., 183; 1 Starkey's Evidence, 135; 9 Cushing, 361; Atwood vs. Welton, 7 Conn., 66.

The reasons for holding the indignation meeting, or the reasons of witness for attending it, could not be inquired into. Its only relevancy consisted in the fact that it was hostile to the prisoner, and that the witness took part in it. He had a right to draw out those facts, and then the inquiry should have stopped. Suppose a witness, with a view of ascertaining his feelings towards a prisoner, is asked if he has not had a controversy with the prisoner. If he answers in the affirmative would that be a sufficient reason for the other side to ask him the cause of the controversy, and for the court to permit him to go on and give a long account of other matters in no way connected with the crime for which the prisoner was on trial, and detail broils and shooting scrapes that the prisoner had been engaged in, in which the lives of women and children were endangered? It is permissible to prove that witness and prisoner had a controversy, from which hostility was engendered. It is of no consequence which was in the right in

such controversy. It is of consequence that it caused hostility to the prisoner.

The admission of such evidence before a jury would certainly have a baleful influence on the prisoner's case and would tend to induce them to believe that if he had been guilty of other crimes of a character similar to the one for which he was on trial, that he must be guilty of that too.

The fifth and sixth assignments of error are as follows :

"5. The court below erred in overruling motion of the defendant's counsel, requiring the State to place Sol. R. Jones and Robert Selph, two witnesses summoned on behalf of the State, (who were eye witnesses of the said homicide,) on the stand as State witnesses.

" 6. The court below erred in refusing to allow the defendant's attorney after the State had rested, to call Sol. R. Jones, a State witness, to the stand for the purpose of cross examining him touching the *res gestæ*, after it had been proven that he, the said Jones, had been an eye witness to said homicide, and of all the circumstances attending the whole transaction."

We will consider them together. Some of the English decisions support the principle contended for by the plaintiff in error; that it is the duty of the prosecution to introduce all the witnesses whose names are on the indictment or who were present at the time of the commission of the offence, but they do not seem to be uniformly so. In the case of Regina vs. Holden, 8 Car. and P., 606, the prisoner was on trial for murder. It appeared that three surgeons had examined the body of the deceased. Two of them were called, but counsel for the prosecution declined calling the third, as his name was not on the back of the indictment. The witness was in court. The Judge directed him to be called, and he was examined

by the judge at the conclusion of the case for the prosecu-
tion. In the case of Rex vs. Bodle, 6 Car. & P., 186,
Gaselee, J., said: " My learned brother and myself are ot
the opinion that if the counsel for the prosecution decline
calling a witness whose name is on the back of the indict-
ment, *it is in the discretion of the Judge* who tries the case
whether the witness shall be called for the prisoner's coun-
sel to examine him, before the prisoner is called on for his
defence." In the case of Rex. vs. Simmonds, 1 Car. and P.,
84, it appeared that after the counsel for the prosecution
had closed his case, that there was the name of another
witness on the indictment who had not been called. The
counsel for the prosecution declined calling him. Hullock,
B., said: " Though the counsel for the prosecution is not
*bound* to call every witness whose name is on the back of
the indictment, it is usual for him to do so; and if he
does not, I, as the Judge, will call the witness, that the
prisoner's counsel may have an opportunity of cross exam-
ining him." In the case of Rex vs. Whitbread, 1 Car. and
P., 84, the prosecution omitted to call the apprentice of the
prosecutor, who had been implicated in the theft, and was
examined at the police office, and before the grand jury,
and whose name was on the back of the indictment. The
prosecutor refused to call him. Holroyd, J., and Bur-
rough, J., held that the prosecutor is not bound to call all
the witnesses whose names are on the indictment merely to
let the other side cross examine them. In the case of
Hurd vs. The State, 25 Mich., 405, the court says:
" But the prsecution can never, in a criminal case, prop-
erly claim a conviction upon evidence which, expressly
or by implication, shows but a part of the *res
gestœ*, or whole transaction, if it appear that the evi-
dence of the rest of the transaction, is attainable. This
would be to deprive the defendant of the benefit of the

presumption of innocence, and to throw upon him the the burden of proving his innocence. It is the *res gestœ*, or whole transaction, the burden of proving which rests upon the prosecution (so far at least as the evidence is attainable.) It is that which constitutes the prosecutor's case, and as to which the defendant has the right of cross-examination; it is that which the jury are entitled to have before them, and, ' until this is shown, it is difficult to see how any legitimate inference of guilt, or of the degree of the offence, can be drawn.' "

To the same effect is the State vs. Magoon, 50 Vermont, 333, and also Hanna vs. Territory of Montana, 5 Montana, 248. The Michigan court seems to draw its conclusion that all the witnesses must be introduced from the predicate that the " *res gestœ*, or whole transaction," must be proven, and that the burden rested on the prosecution. It seems to think that only " a part of the *res gestœ* " is proven unless all the witnesses who were present are introduced and sworn. We do not see why an entire transaction may not be fully proved, although only a part of the persons who witnessed it testified as to it. The rule is somewhat weakened in Michigan by the recent case of State vs. Quick, 51 Mich., 547. If it is true that the rule in England is as claimed by the counsel for the prisoner, it must have come into use when, by the English law, the prisoner was not allowed to have counsel to speak in his defence, and was compelled to rely on his own efforts, though unlearned in the law, against the learned lawyers who appeared for the crown. In such a travesty on a judicial trial it was as little as the court could do to compel the prosecutor to prove the entire transaction and all the *res gestœ*, and to call all the witnesses both for and against the prisoner.

There is no necessity for any such practice in this State.

Moses Beauregard Selph v. The State of Florida—Opinion of Court.

The prisoner is entitled to be represented by counsel, to advise him, to submit his evidence, and argue his cause to the jury, and at the same time, if he desires to do so, he can make a statement under oath. If he is not able to employ counsel the court provides counsel for him. He is entitled to the compulsory process of the court to compel the attendance of his witnesses, and if he introduces no evidence he is entitled to the concluding argument to the jury. Every lawyer knows the value to the prisoner of this privilege. Were the rule as insisted on in force in this State it would be difficult to convict a prisoner where the State was compelled to introduce the evidence relied on by him for his defence, and then, because he had not introduced any evidence himself, allow him the concluding argument to the jury. Besides this, the compulsion of one side to introduce witnesses for the other would create confusion in practice as to the right of contradiction of witnesses and their cross-examination, and would be useless, as the prisoner has the power to put the witnesses on the stand himself if he desires it.

The following cases hold the reverse of the proposition contended for by counsel for the prisoner: Morrow vs. State, 57 Miss., 836 ; State vs. Smallwood, 75 N. C., 104 ; State vs. Martin, 2 Iredell, 101 ; State vs. Cain, 20 W. Va., 679.

Our conclusion is that the counsel prosecuting for the State cannot be compelled to call all the witnesses who were present at the time of the commission of an offence, or all whose names are on the indictment. We do not [sic] deny the right of the presiding Judge, when prompted by sound discretion, to call and examine witnesses of his own accord, when the interests of justice demand it, whether the wit-

35

ness be for or against the State, and in such a case to permit counsel on both sides to cross-examine such witness.

We do not express an opinion on the motion for a new trial. It would be manifestly improper for us to express an opinion on the evidence that was introduced, and which will be again introduced on another trial, as we would have to do in considering what degree of crime was shown by it; nor do we think it necessary to express an opinion on the alleged misconduct of the jury and the qualification of the juror Blanton, as those questions will not come up in the next trial, and the law relating to them is by no means scant or novel.

Judgment reversed and new trial granted.