James Roberson and Tom Edenfield, Plaintiffs in Error, vs. The State of Florida, Defendant in Error.

1. Motions for severance are addressed to the discretion of trial courts, and an appellate court will not interfere with the ruling denying such motion where there is nothing in the record showing the truth of the maters proposed as grounds therefor.
2. Statements of matters of fact in motions cannot be taken as evidence of the facts therein .recited.
3. Questions addressed to proposed jurors as to whether they "understand the meaning of a circumstantial evidence case," and as to whether a case hypothetically stated depends upon circumstantial evidence, are properly excluded, because they do not tend to test the qualifications of the proposed jurors; nor are such questions authorized by section 1086 Revised Statutes, which provides that "when the nature of any case, civil or criminal, requires a knowledge of reading, writing and arithmetic, or either, to enable the juror to understand the evidence on the trial, it shall be cause of challenge if he does not possess such qualifications, to be determined by the judge presiding at the trial."
4. The court is authorized to regulate the order of the introduction of evidence, and its discretion in this matter will only be interfered with by an appellate court where clearly abused.
5. Evidence of another and distinct crime committed by a defendant in no way connected by circumstances with the one for which he is being tried is inadmissible, but proof of any

fact with its circumstances, even though amounting to a distinct crime, if it has some relative bearing upon the issue being tried is admissible.

6. Evidence of the misconduct of a defendant in intentionally suppressing, destroying or concealing the evidences of a crime alleged to have been committed by him, is relevant.

7. Evidence that a defendant charged with breaking and entering a building with intent to commit larceny subsequent to the alleged breaking intentionally burned the building alleged to have been broken, in order to conceal the physical evidences of such breaking is admissible.

8. Evidence that goods alleged to have been stolen by breaking and entering a building were recently after the breaking found in the defendant's possession and of the explanation of such possession by the defendant then given, is material, but evidence that the search was instituted and conducted under authority of another and distinct warrant, for another and distinct crime, in no way connected with the crime of larceny of the particular goods found or the breaking by which they were obtained, is inadmissible.

9. Under section 1096, 1097, Revised Statutes, a witness may be questioned as to his previous conviction of crime in this State, and it is not necessary to produce the record of his conviction unless the witness denies or fails to admit such conviction.

10. The general rule is that evidence of particular acts of misconduct cannot be introduced to impeach the credibility of a witness.

11. It is proper to show the relations of the doers to one another, which, with other relevant facts, may tend to support an inference of a conspiracy between them to commit a crime charged.

12. If evidence introduced tends to prove an irrelevant or immaterial fact, as well as one material and relevant, the court properly refuses an instruction withdrawing such evidence entirely from the consideration of the jury, but errs if it refuses an instruction properly framed, limiting the consideration of such evidence by the jury, to its legitimate purpose.

13. Remarks of the judge during the trial as to the credibility of a witness, or as to the weight of any evidence relevant to the issue, are an improper assumption of or infringement upon the province of the jury, and when duly excepted to by the

Roberson v. State of Florida.—Opinion of Court.

party injured, they may be assigned as error, and constitute ground for reversal.

14. The opinion of a witness as to the identity of a person seen by him, is admissible in all cases where the witness has a previous personal acquaintance with or knowledge of such person, and bases his opinion upon such acquaintance or knowledge.

15. Evidence of other burglaries, and the finding of other stolen goods in other persons' houses, and of other arrests for other offenses, made in the same neighborhood and about the same time, is properly excluded when offered in behalf of a defendant charged with a breaking and entry with intent to commit larceny.

16. Upon the trial of two or more defendants charged with a breaking and entry with intent to commit larceny, any evidence tending to show a joint possession by the defendants, recently after the theft, of the goods alleged to have been stolen at the time of the breaking and entry, is admissible.

17. Where property taken by a *recent* breaking and entry is found in the *exclusive* possession of one who offers no reasonable and credible explanation of his possession, the law authorizes the jury to presume or infer that he not only stole the property, but that he broke and entered the building from which it was stolen, although there is no other evidence connecting him with the breaking.

18. Unless the breaking and entry and the larceny were parts of the same transaction, or if not parts of the same transaction, unless the breaking and entry and the larceny were committed by the same person, the excusive possession of the recently stolen property does not warrant the presumption that the possessor is guilty of breaking and entry, although it does warrant the presumption that he is guilty of larceny.

Writ of Error to the Circuit Court for Orange County.

The facts in the case are stated in the opinion of the Court.

*W. L. Palmer* (with whom was J. Edward Allen on the brief) for Plaintiffs in Error.

*The Attorney General* for Defendant in Error.

CARTER, J.:

At a term of the Criminal Court of Record of Or-

ange county held in December, 1887, the plaintiffs in error were convicted upon an information charging them with breaking and entering the dwelling house of one J. S. Kedney with intent to commit a felony, to-wit: larceny of personal property of J. S. Kedney therein, exceeding the value of $20, and from the sentences imposed they have sued out this writ of error.

I.    The defendants moved for a severance for reasons based upon various matters of fact not appearing of record.    No proof of the truth of these matters of fact was offered, and although the motion recites that the State attorney had admitted in the presence of the court that he expected to introduce upon the trial certain evidence, which the defendant claimed would give them the right of severance, the record before us does not show such admission, and we can not take the statements of the motion as evidence of the facts therein recited.    Garner v. State, 31 Fla. 170, 12 South. Rep. 638; Lambright v. State, 34 Fla. 564, 16 South. Rep. 582. As the matter of severance rests in the sound discretion of the trial court (Ballard v. State, 31 Fla. 266, 12 South. Rep. 865), we can not interfere with a ruling denying same in the absence of evidence showing the truth of matters proposed as grounds therefor.

II.    Plaintiffs in error propounded to proposed jurors the following questions: "1st.    Do you understand the meaning of a circumstancial evidence case? 2nd.    If A owns a barn worth $1,000, its contents worth $500, the barn and the contents are insured for $3,000, A is seen to enter the building and leave it, and shortly afterwards the barn is burned.    He is charged with burning the house.    Would you call that a case of circumstantial evidence?"    The court correctly refused to permit these questions to be answered, for the answers, whether affirmative or negative, could have had no bearing upon the qualifications of the proposed jurors. The

Roberson v. State of Florida.—Opinion of Court.

law does not require jurors to be lawyers, and if it should become necessary upon the trial for them to know the definition of circumstantial evidence, they could be taught that definition by proper instructions from the court. The questions were not authorized by that part of section 1086 Revised Statutes which provides that "when the nature of any case, civil or criminal, requires a knowledge of reading, writing and arithmetic, or either, to enable the juror to understand the evidence on the trial, it shall be cause of challenge if he does not possess such qualification, to be determined by the judge presiding at the trial," as contended by defendants. These questions were not framed to ascertain the extent of the proposed jurors' knowledge of "reading, writing or arithmetic," even if the "nature of the case" was such as to authorize inquiries along that line.

III. The evidence against the defendants was largely circumstantial. There was no positive proof that the Kedney dwelling was ever broken, but the evidence tended to show that the building was occupied by its owner as a winter residence until about June 15, 1897, when he departed for his home in Minnesota, leaving the house unoccupied, but in the care of neighbors with whom the keys were left; that the goods alleged to have been stolen at the time of the alleged breaking, consisting of household furniture, were left in the second story of the building by the owner; that those in charge of the building visited it at various times up to September 26th, observing no evidences of a breaking of the building or the loss of any of the furniture, and it seems not to have been suspected that the house had been broken, or the goods stolen until after the destruction of the house by fire on September 26. There was also evidence tending to show that defendant Roberson about June 12th made inquiries of one Albert Carey as

to the location of the Kedney house and the goods therein, stating that he wanted some nice things like blankets, bedding, etc., and that a man could break into a house like that, get what he wanted and then "burn the house and hide it all so he would not be caught." There was also evidence tending to show that during July, August and the early part of September, Roberson was frequently at Edenfield's house; that for about ten days prior to September 26th, Roberson lived in the same house with Edenfield, and his sister Mamie, not a great ways from the Kedney place, and that on September 26th officers searched Edenfield's house in the presence of Edenfield and his sister and found therein the property alleged to have been stolen from the Kedney house; that Edenfield was thereupon arrested and within an hour or so afterwards the Kedney house was found to be on fire. There was also evidence tending to show that a few moments after the officers left Edenfield's house, Roberson was seen near there in the weeds. The court over defendants' objections permitted a witness to detail circumstances of the burning tending to show that the fire was of incendiary origin. The objections were that the testimony was immaterial and irrelevant; that defendants were not on trial for arson and that the State had not then connected defendants with the breaking nor with the burning. As to the last objection it is true that at the time this evidence was admitted the State had not offered any evidence tending to connect defendants with the breaking or burning of the house, but as this was subsequently done before the State closed its evidence in chief, the defendants were not injured by the order in which the testimony was admitted. The trial court is authorized to regulate the order of the introduction of evidence (Jenkins v. State, 35 Fla. 737, 18 South. Rep. 182), and its discretion in this matter will only be interfered with where clearly abused. We think

the evidence subsequently introduced by the State, tending to connect defendants with the alleged breaking, and the defendant Roberson with the burning, rendered the testimony objected to relevant and material.   It is true that evidence of another and distinct crime committed by a defendant in no way connected by circumstances with the one for which he is being tried is inadmissible. It is equally true that proof of any fact with its circumstances, even though amounting to a separate crime, if it has some relevant bearing upon the issue being tried, is admissible in evidence. Mann v. State, 22 Fla. 600; Bishop's Crim. Proc., §§ 1121-1123.   Any evidence which legitimately furnishes a presumption against the defendant's innocence of the crime with which he is charged is relevant and material, and in this connection it is laid down in the books that the presumption of guilt may be raised by the misconduct of a party in intentionally suppressing, destroying or concealing the evidence of a crime alleged to have been committed by him. Wharton's Crim. Ev., §748 *et seq.*; 1 Greenleaf on Ev., § 37; 1 Taylor on Evidence, § 116; Adams v. People, 9 Hun. 89; Commonwealth v. Webster, 5 Cush. 295, text 316, S. C. 52 Am. Dec. 711; State v. Chamberlain, 89 Mo. 129, 1 S. W. Rep. 145.   The evidence which we have briefly stated above tended to show that the house alleged to have been broken was burned by defendant Roberson, in order to conceal the physical evidences of such breaking. We do not intimate whether the evidence was or was not sufficient to establish that fact, nor that the presumption drawn from proof of that fact would alone be sufficient to sustain a conviction; we simply hold that evidence tending to prove the fact is relevant and  admissible even  though it  tends  to  show that Roberson committed another crime.   Adams v. People, 9 Hun. 89.

IV.   The witness John F. Gordon testified on be-

half of the State that he as deputy sheriff with two other officers searched the dwelling occupied by defendant Edenfield and his sister Mamie on September 26th, and that they there found the household goods of Dr. Kedney alleged to have been stolen at the time of the alleged breaking of his dwelling.   Over defendants' objections this witness and one of the other officers, Brocksmith, were permitted to testify that this search was made under authority of a search warrant issued at the instance of a person other than Kedney or his agent, and concerning other and different goods supposed to have been stolen from another party at a different time in no way connected with the crime charged in this information. In admitting this evidence the court was clearly in error.   The search for and finding of the Kedney goods, together with the explanation as to their possession then offered by the Edenfields was relevant and admissible, but the authority under which the search was made, not having been issued in connection with the crime charged, was irrelevant, and calculated to injure the defendants by showing that they were charged with, or suspected of the commission of other and distinct crimes in no way connected with the one on trial.   Mann v. State, 22 Fla. 600; Selph v. State, 22 Fla. 537.   For the same reasons the court erred in permitting the witnesses Gordon and Anderson to testify as to the arrest of defendant Roberson on September 28th, under a warrant for another offense in no way connected with the crime charged in the information.

V.   The fifth assignment of error, relating to the testimony of Albert Carey as to a conversation with Roberson in June, 1897, referred to in a preceding paragraph, not being argued, is treated as abandoned.

VI.   On cross-examination defendant's counsel propounded the following questions to Albert Carey, a State witness:   "Were you not convicted in this court

this year for assault and entered pleas of guilty?  And
didn't you by your attorney or friends also set up or
submit to the court that you were drunk at the time and
was weak or feeble minded and not responsible?"   We
do not understand that the court excluded the first
question, but ruled that as to the matters embraced in
the second one the defendants were confined to the re-
cord of witness' conviction.   The defendants ex-
cepted to the ruling, and thereupon the record
was introduced by the State attorney showing that in
July, 1897, the witness Carey was convicted in the Or-
ange county Criminal Court of Record of assault and
battery, upon a plea of guilty entered by Carey's attor-
ney in his absence, and that Carey was sentenced to pay
all costs in that case, and two others *nolle prossed*, and,
in default of payment, to thirty days confinement in the
county jail.   Section 1096 Revised Statutes provides
that "persons who have been convicted in any court in
this State of murder, perjury, piracy, forgery, larceny,
robbery, arson, sodomy or buggery shall not be compe-
tent witnesses. (Even a pardon of a person convicted of
perjury shall not render him competent.)   Such convic-
tion may be proved by questioning the proposed wit-
ness, or, if he deny it, by producing a record of his con-
viction."   Section 1097 provides that "testimony as to
the general character, and an admission of proof as pro-
vided in section 1096 of the conviction of any witness
who shall have been convicted in this State of any crime
other than those mentioned in said section, or who shall
have been convicted of any crime in any other State
may be given in evidence to affect his credibility."  Un-
der these provisions a witness may be questioned as to
his conviction of a crime in this State (Milton v. State,
40 Fla.—, 24 South. Rep. —), in the one case to dis-
qualify him, in the other to affect his credibility, and it
is not necessary to produce a record of the conviction

unless the witness denies or fails to admit such conviction. The first question asked this witness was therefore entirely proper, but the error in overruling it, if any, was completely cured by the subsequent introduction of the record. The second question was, we think, an improper one. The defendants made no effort to show that Carey was, at the time he was giving his testimony, drunk, or weak minded, or feeble minded, but the apparent object of the question was to show a particular act of misconduct or insincerity on the part of the witness at the time of his conviction of the offense with which his credibility was sought to be affected. The witness' acts at that time had no relation to the charge against the defendants, and being irrelevant and immaterial could not have been made the basis of proof to contradict him if he had denied the conduct implied by the question. Selph v. State, 22 Fla. 537; Eldridge v. State, 27 Fla. 162, 9 South. Rep. 448. Not only does the statute quoted confine impeaching evidence to the "general" character of the witness, but it is the general rule in the absence of such a statute that evidence of particular acts of misconduct can not be introduced to impeach the credibility of a witness. Greenleaf on Evidence, § 461; Wharton's Crim. Ev. §486; 2 Taylor on Evidence, § 1470 A. See, also, Reddick v. State, 25 Fla. 112, 5 South. Rep. 704; Mercer v. State, 40 Fla. ——, 24 South. Rep. ——.

VII. There was evidence tending to show that on the night of September 17th, defendant Edenfield together with another man and a woman moved into the house where Edenfield and his sister were living at the time the goods alleged to have been stolen were found therein. There was also evidence tending to show that subsequent to September 17th Roberson lived in this house with Edenfield and his sister Mamie, and that previous to his re-

moval to this house he resided in the neighborhood of one F. S. Weeks. The State attorney propounded to said Weeks on direct examination the question: "Please state, Mr. Weeks, where defendant Roberson lived during July, August and early part of September, 1897?" Witness answered that Roberson lived with Mamie Edenfield in a house about one-third of a mile from his place, and that no one else was there but these two and two little children. Defendants moved to strike the answer, because irrelevant and immaterial; because Roberson was not on trial for adultery or fornication, and because the evidence tended to attack Roberson's character and reputation. The court overruled the motion, remarking that the State could show the previous relations of the parties as it formed a circumstance to be considered by the jury. Thereupon the attorney for Roberson addressed the court, in part, as follows: "Does the court fully understand that the evidence now going in is in no way connected with the house where the goods were found? I beg to call the court's attention to the fact that the evidence of this witness is not about defendant Roberson and Thomas Edenfield, but is concerning Mamie Edenfield and defendant Roberson at a different time and place to that of the finding of the goods, and its purpose must be manifest to the court, to-wit: to show an adulterous relation between defendant Roberson and Mamie Edenfield, and that if he was guilty of that crime the jury is to be induced to believe that he would break and enter a house." The attorney for Edenfield addressed the court as follows: "I desire in behalf of defendant Edenfield to call the attention of the court to the fact that it is unfair to Edenfield to admit this evidence, especially because it is intended to show that Edenfield not only permitted the living together of Mamie Edenfield and the defendant Roberson, but immediately afterwards and during the time permit-

ted such relations.   We ask the court to prevent such injustice."   The court thereupon remarked: "I allow the question and answer to stand.   I am not responsible for the trouble these people have gotten themselves into."   Defendants excepted to the ruling upon the motion to strike, and the remark of the court above quoted. We think the court correctly declined to strike the evidence objected to.   There was evidence tending to prove that Roberson, with Thomas Edenfield and Mamie Edenfield, lived in the house where, and at the time when, the goods alleged to have been stolen from the Kedney dwelling were found, and that the goods were found in their joint possession.   The testimony embraced in the objections now under consideration, tended to show that Roberson for several months prior to the finding of the property alleged to have been obtained at the time of the commission of the crime charged was upon terms of friendship with one of the persons in whose possession the property was found, and that he had had opportunities of forming a conspiracy with her to commit the alleged crme. It is proper to show the relations of doers to one another which with other relevant facts, may tend to support an inference of a conspiracy between them to commit a crime charged.   2 Bishop's Crim. Proc. § 227. The evidence being admissible for this purpose it was properly admitted.   If it tended to prove an irrelevant or immaterial fact, as well as one material and relevant, the defendants would be entitled on request to an instruction from the court limiting the consideration of such evidence by the jury to its legitimate purpose.   But we think the remark of the court, that he was not responsible for the trouble these people had gotten themselves into, was highly improper.   This expression very clearly conveyed to the jury the judge's opinion of the weight and effect of evidence produced.   If it did not amount to an expression of opinion as to defendants'

Roberson v. State of Florida.—Opinion of Court.

guilt upon the entire case, it clearly did imply that the evidence then admitted showed that "these people (Mamie Edenfield and Roberson) had gotten themselves into" trouble.  Now the mere fact that these persons lived in the same house prior to the breaking of the Kedney dwelling, did not of itself establish the fact they conspired together to break that dwelling, nor did it show that the parties had thereby "gotten themselves into trouble" of any kind.  It was merely a circumstance tending to show that the parties were not entire strangers to each other, and that they had opportunities to form the conspiracy, but only when considered in connection with other evidence in the case could it be said that the circumstance then proven showed that the "parties had gotten themselves into trouble," and even then that was a question exclusively for the jury to determine.  It is thus apparent that the remark amounted to an expression of opinion, not only as to the probative effect of the particular evidence then introduced, but of other evidence already admitted, and when we consider that the defendants denied any conspiracy whatever between themselves or with Mamie Edenfield, the error of this remark becomes plainly apparent. We have repeatedly held that remarks of the judge during the trial, as to the credibility of a witness, or as to the weight of any evidence relevant to the issue, are an improper assumption of or infringement upon the province of the jury, and when duly excepted to by the party injured they may be assigned as error and constitute ground for reversal. Garner v. State, 28 Fla. 113, 9 South. Rep. 835; Hubbard v. State, 37 Fla. 156, 20 South. Rep. 235; Lester v. State, 37 Fla. 382, 20 South. Rep. 232.

VIII.  The eighth assignment of error complains that the witness F. S. Weeks was permitted to testify to facts showing adultery on the part of Roberson and Mamie Edenfield.  We find no such evidence in the

record, and the assignment is therefore not well founded in fact.

IX.   The State introduced G. B. Lawson who testified that he had known defendant Roberson by sight for five years; that on the evening of September 26th, shortly after the officers had found the goods alleged to have been stolen, he was near the house where the goods were found; that he saw a man in the weeds near the house; that he could not swear who it was, but in his opinion it was Roberson.   Defendants objected to this last statement as being merely matter of opinion.   The court correctly overruled the objection.   The opinion of a witness as to the identity of a person seen by him is admissible in all cases where the witness has a previous personal acquaintance with or knowledge of such person, and bases his opinion upon such acquaintance or knowledge.   Lawson on Expert Evidence, R 45, P. 273; 1 Greenleaf on Evidence, §440; Wharton's Crim. Ev., §459.

X.   J. S. Brocksmith, a State witness, testified that he and Carter and Gordon searched Edenfield's house on September 26th, and there found the Kedney goods alleged to have been stolen in possssion of Edenfield and his sister Mamie. On cross-examination the witness was asked by defendants, "did you search any other houses in that section?"   This question was overruled the court remarking to defendants' counsel, "you must confine yourself to these goods." The court properly excluded the question stated.   Counsel stated to the court below, and argue in this court, that the question was relevant, not because it would secure evidence that any of the Kedney goods were found elsewhere, but because it would secure evidence going to show other burglaries in that section and the finding of other goods in other people's houses and other arrests made.   This evidence could have no bearing upon the

Roberson v. State of Florida.—Opinion of Court.

guilt or innocence of these defendants upon the charge then being tried, and was entirely irrelevant.

XI. The sixteenth assignment of error complains that "the court erred in permitting witness C. R. Carter to testify as to examination and identification of shoes of defendant Roberson and finding of said shoes, said evidence being to show said defendant was suspected of other crimes than the one for which he was on trial." The shoes so identified by Carter were found in Edenfield's house at the time of the search which resulted in finding the Kedney goods. The State's evidence tended to prove that Roberson was living in this house with the Edenfields at the time the goods were found, and that Roberson was a joint possessor of the goods with the Edenfields. The finding in the house of articles of wearing apparel belonging to Roberson was a circumstance tending to prove that he resided there, and was therefore admissible.

XII. The court instructed the jury that "in cases of circumstantial evidence it is not necessary that the proof shall be conclusive, it is sufficient if the jury believe from all the facts and circumstances of the case that the accused is guilty, and that they have no reasonable doubt in their minds of this fact. If the jury think that the facts in this case are all consistent with the supposition that the prisoners are guilty, and can not reconcile the circumstances produced in evidence with any other supposition than that of guilt, it is their duty to find them guilty. All that can be required is not absolute and positive proof, but such proof as convinces them that the crime has been made out against the accused beyond a reasonable doubt." The defendants insist that this instruction was erroneous because it failed to embrace the idea that there must be such a *well connected and unbroken* chain of circumstances as to exclude every other reasonable hypothesis but that of the guilt of the

accused, and that these circumstances must not only be *consistent* with guilt, but *inconsistent* with innocence. A cursory reading of the instruction will show that these criticisms are not merited, and besides, at the defendants' request, the court gave upon this subject another instruction that "circumstantial evidence is received and acted upon by courts and juries of the country, but such evidence should be received and acted upon with caution, and before you are warranted in convicting either or both of the defendants in this case, there should be such a well connected and unbroken chain of circumstances as to exclude every other reasonable hypothesis but that of guilt; it must be not only consistent with guilt, but it must be inconsistent with innocence; in other words, it must point directly to the guilt of the accused, and if it points with equal strength to the guilt of some other person, you must acquit the defendants." Taking these instructions together, the points suggested by defendants are fully covered.

XIII. The court instructed the jury as follows: "Where property taken by breaking and entering with intent to commit a felony is found in the exclusive possession of the defendant being tried on the charge, recently after the breaking and entering and the theft of the goods so found, when standing alone, is sufficient to cast upon him or them the burden of explanation how he came to them, or of giving some explanation, and if he fail to do so, to warrant the jury of convicting him of the crime charged. The explanation given must not only be reasonable; it must be credible or enough so to raise a reasonable doubt in the minds of the jury who are the judges of the reasonableness and probability as well as credibility;" and at the request of the State: "The unexplained possession of property shown to have been taken by burglary or robbery is sufficient to warrant a conviction of these crimes, and any explanation of

such possession must be both reasonable and credible or enough so as to raise a reasonable doubt in the minds of the jury who are the sole judges of the reasonableness and probability as well as credibility;" and declined to give the following requested by the defendants: "If you believe from the evidence that the house of Dr. Kedney was broken and entered and goods taken therefrom; that the goods were found in a house of which the defendants were in possession as tenants or occupants; that in the absence of a reasonable and credible explanation of how the goods came to be in their house, the fact that the goods were found in the house would be a circumstance proper for you to consider in considering the question of the guilt or innocence of having broken and entered the house, but this fact, that the goods were found in the house unsupported by other evidence of their connection with the breaking and entering it, would not be sufficient to convict the defendants of the crime charged." The first instruction given was correct, and strictly in line with the decisions of this court. Tilly v. State, 21 Fla. 242; Leslie v. State, 35 Fla. 171, 17 South. Rep. 559; Rimes v. State, 36 Fla. 90, 18 South. Rep. 114. The instruction requested by the defendants was properly refused, because it announced a contrary rule. If the property *was taken by a recent breaking and entry,* and is found in the exclusive possession of defendant, who offers no reasonable and credible explanation of his possession, the law authorizes the jury to presume or infer that defendant not only stole the goods, but that he broke and entered the building from which they were stolen, although there is no other evidence connecting him with the breaking. But unless the goods were obtained by a breaking and entry, in other words, unless the breaking and entry and the larceny were parts of the same transaction, or, if not parts of the same transaction, unless the breaking

and entry and the larceny were committed by the same person, the exclusive possession of property recently stolen does not warrant a presumption that the possesor is guilty of the breaking and entry, although it does warrant a presumption that he is guilty of larceny. Knickerbocker v. People, 43 N. Y. 177; Commonwealth v. McGorty, 114 Mass. 299; Brooks v. State, 96 Ga. 353, 23 S. E. Rep. 413; State v. Rivers, 68 Iowa, 611, 27 N. W. Rep. 781; Smith v. People, 115, Ill. 17, 3 N. E. Rep. 733; People v. Wood, 99 Mich. 620, 58 N. W. Rep. 638. The instruction given on behalf of the State was erroneous, in that it did not embrace the requirement that the possession must be exclusive, and recently after the larceny by breaking. Tilly v. State, 21 Fla. 242.

XIV. The defendants' eighth requested instruction was properly refused, because the court had already by its second instruction given the jury in charge the substance of the refused instruction.

XV. The defendants requested the court to charge the jury that "in a case like this, where the parties are being tried together for one and the same offense, the fact that one of the defendants has been accused of committing other violations of the law, separate and distinct from the offense of which they are on trial is no evidence that can be considered by the jury as bearing upon the co-defendant, or the defendant himself who is charged with such other violation, and therefore the court instructs the jury that any evidence or insinuation of the commission of other offenses than the one for which the defendants are on trial is absolutely no proof, and forms no circumstance that can be considered by the jury in this case." We think the court correctly refused this charge. It had admitted evidence tending to show that subsequent to the alleged breaking Roberson had set fire to the building alleged to have been broken, for the purpose of destroying evidence of his alleged

crime. We have held that this evidence was properly admitted, and the instruction requested would have withdrawn it from the jury. The instruction requested did not seek to limit such evidence to its legitimate object, but to withdraw it entirely from the jury. It was therefore properly refused.

XVI. At the conclusion of the charge the court remarked to the jury: "Retire, gentlemen, and bring in a verdict." The defendants excepted to this remark, and insist that it was erroneous. We see no impropriety in the language used, and rule that the objections thereto are without merit.

XVII. The question involved in the motion to arrest judgment will in all probability not arise upon another trial, and for that reason we do not consider them.

The judgment of the court below is reversed, and a new trial granted.