Brockenbrough, J.
delivered the opinion of the court. It is certainly true, that, in public prosecutions for a specific *576 offence, it is incumbent on the prosecution to prove that the offence which is charged has been committed: he is not allowed to go into proof of the commission of any other offence than that charged, or of the character of the prisoner, unless'the prisoner himself opens the way for the admission of that evidence by putting his character in issue; and, even in that case, the prosecutor cannot prove particular facts, but must content himself with evidence of general character. ,The reasons on which these positions are founded, are sufficiently obvious./Not only must the proof correspond with the allegation, but it is an important principle, that the prisoner should not be taken by surprise. As he is charged with a particular offence, he has notice to be prepared to defend himself against that charge, and that alone: he cannot be prepared to defend himself against other charges, not exhibited against him, or to maintain the integrity of his whole life, when that is not put in issue; and when it is, he cannot be prepared to account for particular instances of mal-conduct, of which he is not previously informed, and as to which he is not required to defend himself. /
It frequently happens, however, that as the evidence of circumstances must be resorted to for the purpose of proving, the commission of the particular offence charged, the proof of those circumstances involves the proof of other acts, either criminal or apparently innocent. In such cases, it is proper, that the chain of evidence should be unbroken. If one or more links of that chain consist of circumstances, which tend to prove that the prisoner has been guilty of other crimes than that charged, this is no reason why the court should exclude those circumstances. They are so intimately connected and blended with the main facts adduced in evidence, that they cannot be departed from with propriety; and there is no reason why the criminality of such intimate and connected circumstances, should exclude them, more than other facts apparently innocent. Thus, if a man be indicted for murder, and there be proof that the *577 instrument of death was a pistol; proof, that that instrument A . A belonged to another man, that it was taken from his house on the night preceding the murder, that the prisoner was there on that night, and that the pistol was seen in his possession on the day of the murder, just before the fatal act committed, is undoubtedly admissible, although it has the tendency to prove the prisoner guilty of a larceny. Such circumstances constitute a part of the transaction; and whether they are perfectly innocent in themselves, or involve guilt, makes no difference, as to their bearing on the main question which they are adduced to prove. But if the circumstances have no intimate connexion with the main fact; if they constitute no link in the chain of evidence$ then, supposing them innocent, their admission, to be sure, may do no harm, yet they ought to be excluded, because they are irrelevant; but if they denote other guilt, they are not only irrelevant, but they do injury, because they have a tendency to prejudice the minds of the jury; and for this additional reason they ought to be excluded.
The same principles which apply to the proof of the fact, are applicable to the proof of the criminal intent.
The intent with which an act is done, is to be known from the circumstances which precede, accompany, or follow, the act: that intent may be generally ascertained with great correctness, from the conduct of the prisoner on the particular occasion, and from the circumstances connected with the act proved to have been committed. This is the legitimate source from which to draw information of the quo animo. I do not deny that the proof of oilier criminal acts done by the prisoner, may afford a strong or even violent presumption of his intention in the particular act under consideration. To prove that a prisoner charged with larceny, had in his possession other stolen goods, taken from other persons, at other times, or that he has general bad character for honesty, or that he has before been guilty of theft, may afford a presumption that his intent on the present, is similar to his intent on former, occasions. But they do not prove any ne *578 cessary connexion between his intent and his act on this particular occasion, and are liable to all the objections before stated to that kind of evidence.
There is one class of cases in which the courts of England, have allowed the evidence of other criminal acts of the same character to be given in evidence in support of the charge: cases in which it is necessary to prove the scienter. Thus, in prosecutions for uttering forged notes &c. knowing them to be forged, it has been frequently permitted to prove that the prisoner has committed other utterings of forged notes, for the purpose of proving, or of enabling the jury to infer, that he knew that the note which he is charged with uttering, was a forged note. Such was Whiley’s case, 1 New Rep. 94. 2 Leach 983. and Ball’s case, 2 Leach 985. in note; both of which are referred to, and approved by this court in Finn’s case, 5 Rand. 710. The principle on which this species of evidence has been admitted in those cases, is, that it is frequently impossible, from the insulated fact of the uttering a single forged note, to ascertain whether the accused knew it was forged or not. Knowledge exists in the mind; and it is impossible, say the courts, to become acquainted with the secret knowledge of another, without referring to his conduct or his acts on other occasions. A man perfectly honest, who is not skilled in the character of bank notes, may pass a forged note with perfect innocence: the single fact of passing does not prove his knowledge : th¿ courts therefore say, that you may prove other utterings, and the circumstances attending them, for the purpose of proving the knowledge which constitutes the guilt. It is necessity which has driven the courts to the adoption of this rule,'and some judges doubt whether it is correctly established. But it has not been extended, and, for the reasons which I have given, will probably never be extended, to the proof of the quo animo. In the above mentioned case of Whiley, lord Ellenborough is reported to have said, (in assigning his reasons why other and substantive felonies may bo given in evidence in an indictment for uttering) that he *579 knew a case, where, in a prosecution for burglary, proof had been given of three burglaries committed on the same night: that a shirt which had been taken from the first house, had been found in the second, and that when facts are intimately blended and connected together, they may be given in evidence. The remark is calculated to mislead; and on examination it appears to have been a very loose report of what probably took place on some criminal trial. The case is not reported, but it is easy to conjecture a case of burglary, in which it may be proper to prove three burglaries. Thus, if from the first house the burglar carried off sundry articles of clothing, and, amongst others, “ a shirt,” which it was easy to identify, and the “ shirt” was found at the second, from which sundry other articles were taken, some of which being identified were found in the third, from which also sundry other articles were taken, and found on the prisoner •, now on a prosecution for the first burglary, these other burglaries, and the facts connected therewith, may constitute so many links in the chain of evidence, and, therefore, may be proper to he given in evidence. The case referred to by lord Ellenborough may have been such an one as here represented, and, if so, was properly decided.; hut it is not easy to understand why he referred to such a case so loosely reported, for the purpose of proving the position which he was then endeavouring to establish.
Let us now apply the principles here laid down, to the case before us. Evidence was introduced for the purpose of proving, that the prisoner had carried away a cloak from the witness, on a charge of stealing a watch from another person. The first reason assigned was not apparently much relied on, and seems not to be tenable. The witness had said that he was not intimate with the prisoner$ to repel this, he was asked, on cross examination, whether he had not had some dealings with the prisoner, and, particularly, whether he had not sold him a pair of pantaloons : the object seems to have been to produce a contradiction of the witness’s statement respecting their intimacy. The attorney *580 for the commonwealth then asked him, if he had sold him the cloak which the prisoner had taken from him. It does not appear, that the object of this inquiry was'to add to the proof of their intimacy, because, if it had, that would have operated in favour of the cross examination. The object probably was to ascertain, with what motive a particular, distinct fact had been done; and, if so, it does not seem, that the question put in the cross examination could be a reason for introducing it. The principal reason for allowing the question, was to prove the intent with which the cloak was carried away, in order to raise a presumption that if the cloak was taken animo furandi, the watch was taken with the same intent. According to the principles already laid down, this evidence was inadmissible. It was a distinct charge, which the prisoner was not called on to defend, which he could not be prepared to defend, and which had no such necessary connexion with the transaction then before the court as to be inseparable from it. It ought, therefore, to have been rejected.
The objection made to the verdict in this case, may be disposed of in a few words. The prisoner was indicted for grand larceny, and the jury find him guilty of the larceny of which he is indicted, and affix to his crime a punishment which' cannot be applied to petty larceny, but is an appropriate one for grand larceny. They affirm, then, that he is guilty of grand larceny. And there is no error in this respect.
But for the error before stated, the judgment is to be reversed, by the unanimous opinion of the court; the verdict to be set aside; a venire facias de novo awarded, and a new trial had &c.