HENRY MANN, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. The prosecution in a criminal case cannot call witnesses to impeach the character of the defendant unless such defendant puts it in issue. Particular acts of his, or the commission of other crimes, in no way related to the one on trial, cannot thus be proved against him.

2. In a trial for an offence, criminal in its nature (for murder), the State's Attorney inquired of the witness if he suspected the de-

fendant of having "stolen his corn," which, although objected to, was admitted, and he answered, "yes:" *Held*, To be error, as the only effect of the evidence was to prejudice the jury against the defendant, inasmuch as it did not relate to the issue and was immaterial and irrelevant.

3. The State's Attorney is not necessarily compelled to give the names of witnesses not on the indictment, except upon the request of the defendant, and upon the instruction of the court.

4. The court may instruct the jury in regard to their recommendation to mercy under the statute or may read, or cause the statute to be read to them by an officer of the court.

Writ of error to the Circuit Court for Leon county.

The facts of the case are stated in the opinion.

*John S. Beard* and *John Wallace* for Plaintiff in Error.

*The Attorney-General* and *R. C. Long* for Defendant in Error.

The first error assigned is that the court erred in allowing the State to ask Dubois whether he had charged the defendant with stealing his corn, and forbidden him to go into his corn crib, unless witness or his son were present.

The objection is that this was an attack upon the character of the defendant and inadmissible.

The doctrine as to the character and authorities cited has no bearing. The question was asked to show the motive for the crime—that if defendant was in the crib, as the State claimed to be shown by the evidence, it was as a trespasser, and that he had a strong reason for avoiding detection there. There seems to be no doubt as to the propriety of the question.

The 2d assignment is as to introduction of plaster-paris casts of foot prints. This is usual and proper; the only limitation being that the casts must be taken within a

reasonable time after the offence, and under circumstances where the premises, where the tracks are, have not been greatly disturbed. The case cited in Wharton's Criminal Evidence, to the doctrine that to be reliable casts must be taken while tracks are fresh, refers to an examination made a month or six weeks after offence, and after harvest had been made in the field. In this case at bar, where the tracks had not been disturbed, and the casts were taken one week after offence, they were admissible. Wharton's Crim. Ev., secs. 796-7; People vs. Ulrich, 39 Mich., 245.

The third assignment is to the overruling objection of defendant to introduction of witnesses for prosecution not indorsed on indictment. There is no rule of law limiting the State to witnesses which have been examined by grand jury, and indorsed on indictment, nor has there ever been such a practice in this State. In some some States there is a statutory requirement of the kind, and even this is strictly construed, and is held only directory, unless expressly made error by the statute. State vs. Roberts, 2 Dev. & Bat., (N. C.,) 540, 542; State vs. Abrahams, 6 Clarke, (Iowa,) 117, 121; State vs. McClintock, 8 Clarke, (Iowa,) 203, 205; Skipworth vs. State, 8 Tex. Ct. App., 135, 140.

The fourth and fifth assignments are that the court inserted the words, " at hard labor," in charging the jury as to the penalty in case they recommended the defendant to mercy; and that the court instructed the State's Attorney to read to the jury the statute concerning recommendation to mercy.

The words objected to in the charge are immaterial, and if they had been material the fact that the court subsequently had the statute itself read to the jury would have cured the error; the reading of the statute was proper.

Coleman vs. State, 17 Fla., 206 ; Metzger vs. State, 18 Fla., 483, 492-3.

The 6th assignment is the overruling motion for new trial—the remaining ground being that the verdict is unsupported by evidence.

The evidence was purely circumstantial, and has been fully discussed before the court. All the circumstances pointed to the defendant, and it satisfied the jury. Sherman vs. State, 17 Fla., 888.

MR. JUSTICE VANVALKENBURGH delivered the opinion of the court:

In the month of December, A. D. 1885, Henry Mann, the plaintiff in error, was indicted in Leon county for the murder of one Edmund Dubois. Mann was duly arraigned, pleaded not guilty and tried at a term of the court held in January, 1886. The jury found him guilty and recommended him " to the mercy of the court." The defendant entered a motion for a new trial upon the following grounds :

" 1st. The verdict contrary to the evidence.

" 2d. The verdict contrary to law.

" 3d. The verdict contrary to the charge of the court."

This motion was denied, and the defendant excepted to the judgment of the court. The court then, on the 16th of January, 1886, sentenced the defendant to imprisonment for life in the State prison.

From this judgment the defendant appeals and brings the case to this court by writ of error, on a bill of exceptions. The errors assigned are as follows :

1st. In overruling defendant's objection to a certain question asked Emile Dubois as follows : " Did you suspect Henry Mann, the defendant, of stealing your corn, and tell

him of your suspicion, or charge him with it, and at the time tell him that he was not to go into the crib unless you or your son were present?"

2d. In allowing the introduction of plaster-paris casts of feet taken by J. L. Hugon, the prisoner not having been connected with them.

3d. In overruling defendant's objection to the introduction of witnesses other than those upon the back of the indictment, the defendant having had no notice of an intention upon the part of the State to introduce witnesses other than those upon the back of the indictment.

4th. In charging the jury as to what would be the sentence of the court, should the jury recommend the prisoner to mercy, there being no extenuating facts for the jury to consider.

5th. In instructing the State's Attorney to read the statute, in reference to a jury recommending to the mercy of the court, to the jury.

6th. In overruling defendant's motion for a new trial.

The first assignment of error arises upon the evidence of Emile Dubois, which is in substance as follows: "I, Emile Dubois, father of Edmund Debois, live in Leon county, Florida. Henry Mann, the defendant, has been for a long time my servant, and was so at the time of the death of my child. He was the only colored person so employed by me at that time. Mann lived in a house on my premises about three hundred yards from my residence. There were other colored persons living on the plantation as tenants. They had nothing to do about my yard. Mann's duties involved the care and feeding of my mules and horses, the custody of my gear and harness, and required of him free access at all times to all parts of the premises immediately back of the house. The corn with which my mules were fed was kept in a log crib in the back yard. The door of this crib

opened to the south and into the yard.   In the south gable
end there had for a long time been an open window  aper-
ture.  Just before or a few days before the death of my son,
I had caused him to close up this window, and I had
charged him not to allow Henry Mann to enter the crib to
feed, or for any other purpose, unless he (my son) or myself
were present, and I then had the crib door locked and took
the key to the house.   My reasons for taking these precau-
tions were that I had corn stolen from the crib."

The State's Attorney then asked the witness this ques-
tion : "Did you suspect Henry Mann, the defendant, of steal-
ing your corn, and tell him of your suspicion, or charge him
with it, and at the time tell him he was not to go into the
crib unless you or your son were present ?"

The defendant's attorney objected to the question, be-
cause it was an attack upon the character of the defend-
ant before he had himself put his character in issue.   The
court overruled the objection and permitted the witness to
answer the question to which judgment of the court an ob-
jection and exception was duly taken by defendant's coun-
sel.   The witness answered and said: " Yes, I suspected
him of having stolen corn, and told him not to go into the
crib again, unless either I or my son was with him."   He
further  testified  in  substance  that " after which time
my son almost invariably accompanied Mann to the crib
when he fed.   On Sundays the discipline of the place was
somewhat relaxed.   Mann came late in the morning to
feed, and the family sleeping later the crib key was often
passed out of the window to him, and during the day the
key was usually left hanging on a nail on the outside of
the crib and the door left unlocked."

In respect to this assigned error the defendant's counsel
insist that this evidence in regard to the witness' suspicions
was an attack upon the character of the defendant and

should have been excluded; that it was not relevant to the issue. It is a well settled rule of law that the prosecution cannot call witnesses to impeach the character of the defendant unless the defendant put it in issue. Particular acts of his, or commission of other crimes in no way related to the one on trial, cannot be proved against him. Evidence of the bad character of the defendant, as a foundation upon which to raise the presumption of guilt in the particular case, is not permitted. Every case must be tried on its own merits, and be determined by the circumstances connected with it, without reference to the character of the party charged, or the fact that he may be suspected of having been guilty of committing other crimes than the one charged. When a party is charged with a particular offence, he has notice of the nature and character of such alleged offence and has an opportunity to prepare to defend himself. He cannot be expected to be prepared to defend himself against a charge of which he has had no notice and which is first brought to his notice while on trial for another and distinct offence. We can readily see how the jurors might have been, and probably were, prejudiced by this evidence of the *suspicion* of the witness, and as all the evidence of the guilt of the defendant was circumstantial, it may have had the effect to produce the verdict of guilty. It was also immaterial whether the witness suspected defendant or not, and was irrelevant to the issue, and for that reason should not have been admitted. In the case of The State vs. Lapage, 57 N. H., 245, Cushing, Chief-Justice, in his opinion, says: " Proceeding then to consider what has been settled in this matter, I think we may state the law in the following propositions:

"1. It is not permitted to the prosecution to attack the character of the prisoner, unless he first puts that in issue by offering evidence of his good character.

"2. It is not permitted to show the defendant's bad character by showing particular acts.

"3. It is not permitted to show in the prisoner a tendency or disposition to commit the crime with which he is charged.

"4. It is not permitted to give in evidence other crimes of the prisoner, unless they are so connected by circumstances with the particular crime in issue as that the proof of one fact with its circumstances has some bearing upon the issue on trial other than such as is expressed in the foregoing three propositions.

"It is a maxim of our law, that every man is presumed to be innocent until he is proved to be guilty. It is characteristic of the humanity of all the English speaking people that you cannot blacken the character of a party who is on trial for alleged crime. Prisoners ordinarily come before the court and jury under manifest disadvantages. The very fact that a man is charged with a crime is sufficient to create in many minds a belief that he is guilty. It is quite inconsistent with that fairness of trial to which every man is entitled that the jury should be prejudiced against him by any evidence except what relates to the issue; above all, should it not be permitted to blacken his character to show that he is worthless, to lighten the sense of responsibility which rests upon the jury, by showing that he is not worthy of painstaking and care."

Ladd, J., in same case, says: " It is a fundamental principle of law that evidence that the defendant committed one offence, cannot be received to prove that he committed another and distinct offence."

If such is the law in respect to the introduction of evidence by the prosecution as to the character of the defendant, how much stronger would it be in a case where the prosecution attempted to introduce evidence of *suspicions*

which could only have the effect to prejudice the jury against the defendant. We are of the opinion that the admission of the evidence of the witness so objected to was error. State vs. Lapage, 57 N. H., 245 ; State vs. Goetz *et al.*, 34 Mo., 85 ; State vs. Creson, 38 Ib., 372 ; 3d Greenleaf Ev.. §25 ; Wharton Crim. Ev., §57, &c. ; State vs. O'Neal, 7 Iredell, 251 ; 1 Bishop on Crim. Procd., §1062 ; State vs. Turtell, 29 Kansas, 148 ; State vs. Walker, 1 Leigh, 574, marginal; State vs. Barlow, 18 Ohio, 221 ; Com. vs. Webster, 5 Cush., 296 ; People vs. White, 14 Wend., 112 ; People vs. Fair, 43 Cal., 137 ; Selph vs. The State, 22 Fla., 537.

The next error alleged is in allowing the introduction of plaster-paris casts taken by J. L. Hugon, the prisoner not having been connected with them. The witness testified in regard to those casts in substance as follows : At the request of Mr. Dubois he went with him and Mr. Long to examine the premises where his son was found dead ; it was just one week after he found his son. He made a plan of the whole place. The crib is about 30 yards from the house ; back of the crib is a vineyard. The crib is between the vineyard and the house. A part of the vineyard had been recently plowed. He examined the ground and found upon the newly plowed ground foot prints leading from the crib. The foot prints were exactly one week old. He knew the foot prints were just a week old from the appearance of the ground and the grass growing in the tracks. He took plaster-paris casts of the foot prints, four in number, and about one hundred feet from the crib. The prosecution then offered to produce by the said witness the casts but the defendant's counsel objected " because the defendant had not been in any way connected with them." The judge overruled the objection and the casts were admitted. The counsel excepted to the ruling of the court. The witness

then said, " these are the casts that I took of some of the foot prints found by me in the vineyard.   There is a fence adjoining the back of the crib, and there is a hole in this fence leading into the vineyard large enough to admit a man's passing through.   These tracks were made in such a way that any one in the dwelling house could not have seen the person making them.   The chimney of the kitchen and the crib were in the line with the person making the tracks."   We can see no error in the court's receiving this evidence.   The casts were made just one week subsequent to the commission of the alleged crime, and the proof subsequently given showing that the casts, when compared with the barefooted track of the defendant, corresponded in size, shape and general appearance.   It was a circumstance connected with the case to be taken into consideration by the jury.   Wharton Criminal Evidence, §796; State vs. Reitz, 83 N. C., 634; State vs. Morris, 84 N. C., 756.

The third error assigned is in overruling objections to the introduction of witnesses other than those upon the back of the indictment.   It would be proper for the court on application by the defendant, before trial of the cause, to cause the prosecution to submit to him the names of other witnesses than those upon the indictment.   In this case it does not appear that any application of that kind was made either to the court or State's Attorney, and we know no rule of law that compels it.

The fourth and fifth assignments of error refer to the charge of the court with reference to their recommendation for mercy.   We can see no error here.   The court first repeated to the jury in substance the language of the statute and then instructed the State's Attorney to read the statute to them, which he did.   This question has been frequently decided by this court.   Keech vs. State, 15 Fla., 591; Metz-

ger vs. State, 18 Fla., 481 ; Newton vs. State, 21 Fla., 53 ; Denham vs. State, 22 Fla., —.

The fifth and last error assigned is in the court's overruling the motion for a new trial.

This motion was based upon the usual and stereotyped grounds that the verdict was contrary to evidence, law and the charge of the court. The evidence was entirely circumstantial, and inasmuch as a new trial must be had we deem it improper at this time to give an opinion upon its weight.

Let the case be remanded and a new trial had.