171 So.2d 418 (1965)
John Marvin JORDAN and Charles Allen King, Appellants,
v.
STATE of Florida, Appellee.
No. F-412.
District Court of Appeal of Florida. First District.
February 4, 1965.
*419 Harrell, Caro, Middlebrooks & Wiltshire, Pensacola, for appellants.
James W. Kynes, Atty. Gen., and James T. Carlisle, Asst. Atty. Gen., for appellee.
RAWLS, Judge.
Charles Allen King and John Marvin Jordan were charged with possession of burglary tools by an information naming both as defendants. They were tried together before a jury, found guilty as charged, and now prosecute this appeal.
Defendants' basic contention is set out in the first point on appeal, viz.:
THE COURT ERRED IN PERMITTING TESTIMONY AS TO THE PRIOR CONVICTIONS AND RECORD OF THE DEFENDANTS WHEN THEIR CHARACTER HAD NOT BEEN PUT AT ISSUE.
We agree with such contention, and reverse.
During the course of the trial the following colloquy was had between the prosecuting attorney and one of the officers testifying for the state:
"Q. Did either of the two defendants make any statement to you at the jail, other than what you have testified to here?
"A. Yes, sir. I asked about the car and they told me they had borrowed the car from a sailor at the Horseshoe Bar. They did not have a name for the sailor. I asked them also when they intended to return the car to the sailor and they told me they had made no arrangements to give it back. They also told me that they had served time for breaking and entering and grand larceny." (Emphasis supplied)
The trial court overruled defendants' motion to strike the above testimony upon the theory that such testimony was material in proving the intent which the defendants may have had with reference to possession of the subject tools. Moments later, *420 when this officer was questioned by the prosecution as to any reason the defendants may have given for using fictitious identification cards, he testified as follows:
"A. Yes. Dennis Wayne Sunday or Allen King told me that he had done that because of being on probation. I believe he was on probation at the time. As to Landry, I do not recall.
"Q. When you say `Landry' you are referring to
"A. Well, I am referring to John Marvin Jordan, yes, sir."
In the early case of Mann v. State of Florida,[1] Mann had been convicted of the murder of one Edmond Dubois. During the course of the trial the decedent's father testified as follows:
"Yes, I suspected him [Mann] of having stolen corn, and told him not to go into the crib again, unless either I or my son [decedent] was with him * * after which time my son almost invariably accompanied Mann to the crib when he fed."
The state insisted that the question was asked to show the motive for the crime  that if Defendant Mann was in the crib, as the state claimed was shown by the evidence, he was a trespasser and had a strong reason for avoiding detection there. In holding that allowance of this testimony constituted reversible error, Mr. Justice Van Valkenburgh, in speaking for the Supreme Court of the State of Florida detailed the fundamental principles of law that have governed this subject from the earliest days of our judicial system in this state by stating:
"It is a well settled rule of law that the prosecution cannot call witnesses to impeach the character of the defendant unless the defendant put it in issue. Particular acts of his, or commission of other crimes in no way related to the one on trial, cannot be proved against him. Evidence of the bad character of the defendant, as a foundation upon which to raise the presumption of guilt in the particular case, is not permitted. Every case must be tried on its own merits, and be determined by the circumstances connected with it, without reference to the character of the party charged, or the fact that he may be suspected of having been guilty of committing other crimes than the one charged. When a party is charged with a particular offence, he has notice of the nature and character of such alleged offence and has an opportunity to prepare to defend himself. He cannot be expected to be prepared to defend himself against a charge of which he has had no notice and which is first brought to his notice while on trial for another and distinct offence. We can readily see how the jurors might have been, and probably were, prejudiced by this evidence of the suspicion of the witness, and as all the evidence of the guilt of the defendant was circumstantial, it may have had the effect to produce the verdict of guilty. It was also immaterial whether the witness suspected defendant or not, and was irrelevant to the issue, and for that reason should not have been admitted. In the case of The State v. Lapage, 57 N.H. 245, Cushing, Chief-Justice, in his opinion, says: `Proceeding then to consider what has been settled in this matter, I think we may state the law in the following propositions:
"`1. It is not permitted to the prosecution to attack the character of the prisoner, unless he first puts that in issue by offering evidence of his good character.
"`2. It is not permitted to show the defendant's bad character by showing particular acts.

*421 "`3. It is not permitted to show in the prisoner a tendency or disposition to commit the crime with which he is charged.
"`4. It is not permitted to give in evidence other crimes of the prisoner, unless they are so connected by circumstances with the particular crime in issue as that the proof of one fact with its circumstances has some bearing upon the issue on trial other than such as is expressed in the foregoing three propositions.
"`It is a maxim of our law, that every man is presumed to be innocent until he is proved to be guilty. It is characteristic of the humanity of all the English speaking people that you cannot blacken the character of a party who is on trial for alleged crime. Prisoners ordinarily come before the court and jury under manifest disadvantages. The very fact that a man is charged with a crime is sufficient to create in many minds a belief that he is guilty. It is quite inconsistent with that fairness of trial to which every man is entitled that the jury should be prejudiced against him by any evidence except what relates to the issue; above all, should it not be permitted to blacken his character to show that he is worthless, to lighten the sense of responsibility which rests upon the jury, by showing that he is not worthy of painstaking and care.'"
These principles of law were carried forward in Roberson v. State,[2] an 1898 case wherein the Supreme Court stated:
"Over defendants' objections, this witness and one of the other officers (Brocksmith) were permitted to testify that this search was made under authority of a search warrant issued at the instance of a person other than Kedney or his agent, and concerning other and different goods supposed to have been stolen from another party at a different time in no way connected with the crime charged in the information. In admitting this evidence the court was clearly in error. The search for and finding of the Kedney goods, together with the explanation as to their possession then offered by the Edenfield's, was relevant and admissible; but the authority under which the search was made, not having been issued in connection with the crime charged, was irrelevant, and calculated to injure the defendants by showing that they were charged with, or suspected of, the commission of other and distinct crimes in no way connected with the one on trial. Mann v. State, 22 Fla. 600; Selph v. State, Id. 537. For the same reasons the court erred in permitting the witnesses Gordon and Anderson to testify as to the arrest of defendant Roberson on September 28th, under a warrant for another offense in no way connected with the crime charged in the information."
These principles of law have been adhered to by our Supreme Court in an unbroken line of decisions, including the famed Williams v. State case,[3] wherein Justice Campbell Thornal reviewed the cases dealing with this question and concluded by laying down the following rule:
"In view of our analysis of the precedents and for the future guidance of the bench and bar, the rule which we have applied in affirming this conviction simply is that evidence of any facts relevant to a material fact in issue except where the sole relevancy is character or propensity of the accused is admissible unless precluded by some specific exception or rule of exclusion. This rule we hold applies to relevant similar fact evidence illustrated by that in the case at bar even though it points *422 to the commission of another crime. The matter of relevancy should be carefully and cautiously considered by the trial judge."
So the question confronting the trial judge was that of the relevancy of the testimony of the officer as to the statements made by the defendants concerning prior commission of a crime. There is no proof submitted by the state connecting the possession of these tools in the instant cause with a prior offense of breaking and entering and grand larceny. The fact that these defendants had served time for breaking and entering and grand larceny had no connection whatsoever with the alleged offense of possession of burglary tools and had no relevant bearing upon the issue being tried. If, as the trial judge determined, the evidence relating to the commission of a prior crime is admissible upon the theory of proving intent, then the rule excluding such evidence would vanish, and in every instance where one is accused of a crime, the state could as a part of its proof of motive and intent introduce evidence of any conviction of such defendants of prior criminal acts. Such testimony serves only to impeach the character of the accused, and it matters not that the objectionable testimony was a part of a statement given by the defendants to the arresting officers.
Those fundamental principles of law laid down in 1886 are as applicable today as they were at the time they were rendered and are necessary to give credence to the constitutional presumptions of innocence which accompany a defendant into court on the occasion of any trial, be it his first or his twentieth appearance in criminal court.
Reversed, with directions to set aside judgment, sentence and order denying a new trial, and to grant the motion for a new trial.
CARROLL, DONALD K., Acting C.J., concurs.
WIGGINTON, J., dissents.
WIGGINTON, Judge (dissenting).
Appellants were charged with the offense of possessing burglarious tools in violation of F.S. Section 810.06, F.S.A. This statute provides in substance that whoever has in his possession any tool or implement adapted and designed for cutting through, forcing, or breaking open any building in order to steal money or other property therefrom, or to commit any other crime, with intent to use or employ the same for such purpose, shall be punished. It must be conceded, therefore, that the intent of the defendants to use the tools found in their possession for the purpose of breaking and entering a building or for the commission of any other crime is an essential element of the offense to be proved by the State.
It appears without conflict that when defendants were arrested a search of their automobile revealed a crowbar, sledge hammer, chisel, and a screwdriver that had been made into a punch. In response to a proper question propounded to him by the prosecuting attorney, one of the arresting officers proceeded to relate statements made to him by the defendants at the jail after their arrest. The officer testified that they told him they had served time for breaking and entering and grand larceny. Defendants' motion to strike this testimony was denied by the trial judge on the ground that it was a voluntary statement and could properly be considered by the jury in determining whether the defendants entertained an intent to use the tools found in their possession for any unlawful purpose proscribed by the statute.
It is my view that the voluntary statement made by the defendants after their arrest regarding their prior convictions was properly received in evidence, and the court did not err in refusing to strike the witness' testimony. The fact that these defendants had previously been convicted and served sentences for breaking and entering and grand larceny was a factor *423 which the jury had a right to consider in determining whether the tools found in their possession at the time of their arrest were possessed by them for a legitimate and proper purpose, or for an unlawful purpose condemned by the statute.
There is an additional reason why the statement made by the defendants to the police officer after their arrest was admissible in evidence and should not have been stricken on defendants' motion. It has long been the law of Florida that statements of an accused while in the custody of an officer are admissible in evidence, though they are incriminating, if such statements were voluntarily made. Furthermore, it is not necessary in such case for the officer to warn the accused that what he may say can be used against him.[1]
The majority opinion is premised either upon a misunderstanding of the facts in this case, or by a misconception of the law applicable thereto. The majority proceeds on the assumption that the testimony of the arresting officer in which he related statements made to him by the defendants after their arrest was an effort on the part of the State to impeach the defendants' character under circumstances where their character had not been placed in issue. This was not the situation present in the case at the time the objectionable ruling by the court was made. The purpose of the arresting officer's testimony was not to establish that defendants had previously been convicted and sentenced for the crimes of breaking and entering and grand larceny, but for the purpose of relating statements made to the officer by the defendants after their arrest which, although incriminating in nature, were relevant to the offense for which they were being prosecuted, and therefore constituted evidence which the jury could consider in determining the defendants' intent in possessing the tools found in their automobile.
The authorities cited in the majority opinion which are relied upon to support the conclusion reached relate to an entirely different factual situation than the one present in this case. The majority quotes extensively from the early case of Mann v. State of Florida[2] decided by the Supreme Court of Florida in 1886. This case merely held for the proposition that the State could not adduce from one of its witnesses testimony to the effect that he was suspicious of the defendant and believed that he had previously committed larceny. This was the decision which promulgated the rule of law to the effect that the State is precluded from impeaching the character of a defendant before such character is placed in issue.
The majority opinion also relies on the case of Roberson v. State[3] decided by our Supreme Court also before the turn of the century. In that case the State attempted to prove by two witnesses that the search made of the defendants on trial which disclosed stolen goods was made under a search warrant issued in connection with a separate and unrelated offense. The court considered the evidence as an attack on the defendants' character before their character had been placed in issue, and was therefore inadmissible.
Neither the Mann case nor the Roberson case involved the admissibility of testimony in which a witness purports to relate voluntary statements, admissions, or confessions made by a defendant after arrest. It is therefore my view that the facts in the case sub judice are not sufficiently comparable to those in the cases on which the majority opinion relies to make those decisions authority for the conclusion reached. For these reasons I respectfully dissent and would affirm the judgment appealed.
NOTES
[1] Mann v. State, 22 Fla. 600 (1886).
[2] Roberson v. State, 40 Fla. 509, 24 So. 474, 476 (1898).
[3] Williams v. State, 110 So.2d 654 (Fla. 1959).
[1] Kearson et al. v. State, 123 Fla. 324, 166 So. 832; Phillips v. State, 88 Fla. 117, 101 So. 204.
[2] Mann v. State, 22 Fla. 600 (1886).
[3] Roberson v. State, 40 Fla. 509, 24 So. 474 (1898).