255 So.2d 263 (1971)
Edward SHERMAN, Petitioner,
v.
STATE of Florida, Respondent.
No. 40800.
Supreme Court of Florida.
November 24, 1971.
*264 Selig I. Goldin, of Tench & Goldin, Gainesville, for petitioner.
Robert L. Shevin, Atty. Gen., and Charles W. Musgrove, Asst. Atty. Gen., for respondent.
ADKINS, Justice.
By petition for certiorari, we have for review a decision of the District Court of Appeal, Third District (Sherman v. State, 244 So.2d 194), which allegedly conflicts with a prior decision of this Court (State v. Harris, 136 So.2d 633), as well as decisions of District Courts of Appeal (Harris v. State, 123 So.2d 752; Davis v. State, 214 So.2d 41; Fitzgerald v. State, 227 So.2d 45) on the same points of law. Fla. Const., art. V, § 4, F.S.A.
Petitioner, hereinafter referred to as "defendant," deposited with the First National Bank of Melbourne a check in the amount of $850, drawn on an account in the Endicott National Bank, Endicott, New York. A vice-president of the First National Bank of Melbourne testified that, immediately upon depositing this check, the defendant wrote a check for $250 and cashed it. The check for $850 was returned to the First National Bank of Melbourne with the notation "account closed."
Defendant was charged with issuing the worthless check of $850 and entered a plea of not guilty. A verdict of guilty was returned by the jury and defendant was adjudged guilty. The District Court of Appeal in a "per curiam" order affirmed on appeal.
By petition for certiorari, defendant contends first that the decision of the District Court of Appeal conflicts with Harris v. State, 123 So.2d 752 (Fla.App.3d, 1960), and State v. Harris, supra, in which it was held that the issuance of a worthless check without receiving anything of value therefor is, at most, a misdemeanor. Defendant says that in the case sub judice the prosecution was for the issuance of the worthless check in the amount of $850; that this check was deposited with the bank; and that he did not receive "any services, goods, wares or other things of value" by means of the deposited check. See Fla. Stat. § 832.05(3) (a), F.S.A. There is evidence that defendant, immediately upon depositing the check wrote another check for $250 and cashed it. If, at the time of the deposit, the defendant had deducted $250 in cash on his deposit slip, he would have received the $250 at the time of presentation of the worthless check and a deposit entry would have been made for $650. This is no different than *265 depositing the full amount of the worthless check and immediately thereafter writing another check for $250 and cashing it. In other words, the statute does not require that there be a simultaneous transaction whereby the worthless check is presented and the defendant receives something of value.
Fla. Stat. § 832.05, F.S.A., should be construed and applied, so as to fairly and liberally accomplish the beneficial purpose for which it was adopted. It should not be construed so as to bring about an unreasonable or absurd result. See George v. State, 203 So.2d 173 (Fla.App.2d, 1967).
There is no conflict between the decision of the District Court of Appeal and the case sub judice and our decision in State v. Harris, supra. In the Harris case, the Court held that payment of a pre-existing debt by a worthless check does not constitute the obtaining of anything of value in exchange therefor. The evidence in the case sub judice is sufficient to prove that defendant received "a thing of value" ($250) in exchange for the $850 worthless check.
Defendant also says that the trial court erred in refusing to grant a mistrial when the State made an inflammatory argument and the affirmance by the District Court of Appeal conflicted with the decisions of the District Court of Appeal, Third District, in Davis v. State, supra, and Fitzgerald v. State, supra.
Defendant, in his testimony, admitted that he had on one occasion been convicted of a crime. A statement as to the nature of the crime was stricken by the trial court.
In the closing argument of the prosecuting officer, the following comments were made:
"All I can do is present the case to you and show you how there's been a violation of the law. Now, then, this is not the first time that Eddie's been messing around with checks, I'm going to tell you that."
"I have no interest in this case. Eddie is a pretty good old boy, in fact. I have seen him several times, and he knows me. He's seen me a lot of times. It's not been under social circumstances, however, but I can tell you this, I have no personal dislike for him. He just violates the law, and it has got to come to a stop sometime, and this is one of the violations of the law, and I ask you to listen to the law and follow the law, that is my only request."
The welfare of society requires the just and courageous enforcement of the law of the land. All legitimate argument and full exercise of the greatest forensic talents of the public prosecutor are sometimes necessary to be directed to that end. Their fair and proper use should be permitted and encouraged rather than cramped and denied. However, such arguments are all the more effective when kept within proper bounds. No matter how heinous the offense or how guilty the accused appears to be, defendant and his counsel have their rights, and these rights should be safeguarded by the courts. See 6 F.L.P., Criminal Law, § 540. In Davis v. State, supra, defendant testified as to four prior convictions. There was no evidence as to the nature of these crimes or the dates of conviction. The prosecutor in his closing argument made the following remarks:
"Now, he brought a gentleman in here who testified, `Yes, he was in prison from 1964 to March 3rd of 1967.' Less than 44 days after he got out of prison he is back robbing and doing the very same thing for which he was put in there the first time.

* * * * * *
"Gentlemen, if this man is sent out on the street to do the very same thing, the only question that can never be resolved, if you will, or put in the same position to ask, `Am I to be next?'" (p. 42)
*266 The Court found the remarks to have prejudiced defendant's right to a fair trial and reversed the conviction.
In Fitzgerald v. State, supra, defendant was convicted of breaking and entering with intent to commit a misdemeanor and was convicted of petty larceny. He testified, in his own defense, admitting to the prior felony convictions. The prosecuting attorney in his closing argument made the following statement:
"Take, for example, the defendant, Mr. Fitzgerald. Now Mr. Fitzgerald, by his own testimony, has spent the better part of his life in jail." (p. 46)
The prosecutor's statement required the reversal of the conviction.
A statement by the prosecuting attorney in his final argument to the jury to the effect that defendant had possibly been tried on criminal charges before has also been held objectionable. See Noeling v. State, 40 So.2d 120 (Fla. 1949); Gluck v. State, 62 So.2d 71 (Fla. 1952).
The improper remarks of the prosecuting officer in the case sub judice were of such character that neither objection nor retraction could entirely destroy their sinister influence. See Akin v. State, 86 Fla. 564, 98 So. 609 (1923); Singer v. State, 109 So.2d 7 (Fla. 1957). There is no way to determine the effect of these statements on the jury, but the remarks were so fundamentally tainted as to require a new trial.
The decision of the District Court of Appeal is quashed and the cause is remanded for the purpose of a further remand to the trial court with instructions to set aside the judgment of guilt and grant a new trial.
It is so ordered.
ROBERTS, C.J., and ERVIN, CARLTON and BOYD, JJ., concur.