294 So.2d 327 (1974)
Delores WILSON, Petitioner,
v.
The STATE of Florida, Respondent.
No. 44523.
Supreme Court of Florida.
April 3, 1974.
Rehearing Denied June 5, 1974.
*328 Frank Clark III, Cocoa Beach, for petitioner.
Robert L. Shevin, Atty. Gen., and Richard C. Booth, Asst. Atty. Gen., for respondent.
PER CURIAM:
We have for review on conflict certiorari[1] this prosecution and conviction for perjury, affirmed by the Second District Court of Appeal at 284 So.2d 24 (1973), as conflicting with Oglesby v. State, 156 Fla. 481, 23 So.2d 558 (1945); Thomas v. State, 59 So.2d 517 (Fla. 1952); Sherman v. State, 255 So.2d 263 (Fla. 1971); Simmons v. State, 139 Fla. 645, 190 So. 756 (1939).[2]
In 1972, petitioner was indicted for the alleged murder of her husband. In the ensuing trial in which she testified on her own behalf, the jury returned a verdict of not guilty. Six months later the state attorney filed an information charging petitioner with perjury growing out of her testimony in that murder trial. On January 15, 1973, petitioner went on trial on the perjury count and the jury returned a verdict of guilty at 9:00 p.m. that same evening, whereupon the judge immediately sentenced her to confinement in the state prison for a term of six months to 20 years. Petitioner had no previous criminal record and there was no presentence investigation. The district court affirmed and this petition ensued, asserting principally the cumulative damaging effect of the prejudicial remarks and argument of the state attorney relating to the earlier murder trial and the additional accusations of two unrelated felonies of bigamy and adultery, although petitioner had testified that she had never been convicted of a crime, and she was not charged on those offenses.
Oglesby was a reversal by this Court for improper remarks of the prosecutor to the jury as follows:
"`[L]aw enforcement officers of this County would not have brought this Defendant into this Court on this charge if it were not for the fact that there were other matters of this kind that could be tacked on him.'"
The Court further stated:
"It is the rule in this state that the trial judge shall halt improper remarks of counsel made during an address to the jury even though he is not requested to do so. However, a judgment will not be reversed because he failed in the duty unless timely objection was made. If, though, the comments are so prejudicial that `neither rebuke nor retraction may entirely destroy their sinister influence * * * a new trial should be awarded... .'"
The State points out that in some instances there was an absence of objection in the present trial and in other instances an objection to the improper inferences *329 was sustained. Such absence will not suffice where the comments or repeated references are so prejudicial to the defendant that neither rebuke nor retraction may entirely destroy their influence in attaining a fair trial.[3]
Sub judice the prosecutor in closing argument alluded to the murder of petitioner's husband 16 times and directly accused her 3 times of the murder, a crime for which she had been acquitted. The fact that the deceased husband's parents were witnesses before the jury and that the prosecutor repeatedly referred to the parents in his questioning and summation, contributed to the prejudicial atmosphere. Additionally, the prosecutor accused petitioner of the two other, distinct felonies of bigamy and adultery with which she was not charged; neither of them had any bearing whatever on the issue of perjury in this case which related to petitioner's testimony in the murder trial as to the presence or not of her brother in the state on given dates. The materiality of this latter fact to the prosecution for murder, an essential element of perjury, also appears in doubt. Neither did the petitioner as defendant so place her reputation in issue as to justify the broadside attack used here upon her general character.[4]
It is impractical for an attorney constantly to interject effectively his objections to 16 different repeated references by opposing counsel, in view of which fact an occasional neglect to repeat the objection and the absence of the court's ruling thereon will not defeat a contention of the prejudicial effect as a basis for reversal on appeal. After counsel's initial objection and instruction to the jury by the court to disregard the reference to bigamy, there was no rebuke of the prosecutor nor retraction by him; instead, immediately after the court's instruction the prosecutor repeated his accusation of bigamy against petitioner and in the same sentence accused her of adultery; yet there was no action or correction by the court[5]; thereafter, the prosecutor made a further accusation against petitioner of adultery, an immaterial issue to the perjury charge. It is therefore clear, all in all, that the cause was so permeated with these immaterial and fatally prejudicial references, that the conviction cannot stand.
An accused cannot be convicted of murder under the guise of perjury, nor of bigamy or adultery under a different charge; a prosecution must proceed upon the indictment or information upon which it is founded. The result of a given prosecution may not coincide with the view of a prosecutor  nor with that of a judge, for that matter  but the jury's verdict if founded upon the law and the evidence stands nevertheless, the veritable cornerstone of our system of justice. The prosecutor cannot proceed with "another try" for a conviction, albeit under a different label or charge if he really bases it upon the earlier offense of which the same defendant has been acquitted.
The total "flavor" of the trial sub judice amounted to a virtual retrial, under the guise of perjury, of respondent's indictment for the murder of her deceased husband, of which she had been acquitted by a jury. The whole emphasis and total remarks of the prosecutor, with the numerous references to the earlier alleged murder, and his repeated accusations of petitioner regarding "adultery" and "bigamy," were such that the matter of perjury for which the prosecutor's information was drawn was lost in the flood of these other *330 overshadowing charges and accusations. Petitioner was thereby completely prejudiced.
It also appears that the prosecutor's actions even impinged upon the sanctity of the statutory prohibition against a prosecutor commenting upon the defendant's failure to take the stand. Simmons v. State, supra; RCrP 3.250, 33 F.S.A., (replacing F.S. § 918.09). Seizing in such manner upon particular aspects of a defendant's testimony in his own behalf as a basis for a later perjury charge can very well impinge upon a defendant's unfettered right to testify in his own defense, for he may not feel free to relate from memory certain dates and instances which might help to exonerate him if he were always fearful of being charged later with perjury if he happened to be wrong; this is particularly true in the instance of an alibi defense where the circumstances and dates may be tenuous and other witnesses may have differing recollections. A defendant testifying in his own behalf, like any other witness, is sworn to tell the truth and should do so; but he may also simply be wrong or inaccurate in his statement, just as any other witness. We are only saying that the law should not be such as to deter him in a good faith, honest effort to relate circumstances because of a threat of perjury if he should deviate in any respect from what may turn out to be a contrary version of the circumstances, despite his different recollection.
We do not suggest that there may not be instances which justify and even compel a subsequent prosecution for perjury arising out of a prosecution for a different offense. But in the absence of a clear indication of such perjury, it should be the exception rather than the rule that such subsequent prosecution for perjury should follow an acquittal for the crime in question. Particularly is this true in circumstances such as those in the present cause where the subsequent prosecution for perjury is almost tantamount to double jeopardy on the first degree murder charge which brought about an earlier acquittal. When the two charges are so intermingled, and especially where as here the prosecutor makes very pointed and repeated references to the related earlier charge, coupled with persistent accusations of guilt of two other very serious felonies with which petitioner was not charged, the subsequent prosecution for the alleged perjury becomes so enmeshed with and overshadowed by the earlier charge out of which the alleged perjury arose, and with the other immaterial felonies, that the later perjury prosecution cannot be justified; certainly it cannot in the particular circumstances of the present case in which we find that petitioner is entitled to be discharged therefrom. The State's posture in the matter is so tenuous and fraught with such prejudice and questionable materiality as to the alleged perjury that its "second effort" at conviction must be viewed as insufficient to justify its further pursuit.
The petition for certiorari is accordingly granted; the opinion of the district court is quashed with directions to remand the cause to the trial court with directions to quash the information and discharge the petitioner.
It is so ordered.
ADKINS, C.J., ROBERTS, McCAIN and DEKLE, JJ., and SPECTOR, District Court Judge, concur.
NOTES
[1] Art. V, § 3(b) (3), Fla. Const., F.S.A.
[2] Simmons was receded from in part (as to failure to testify in a prior trial or on preliminary proceedings) in State v. Hines, 195 So.2d 550 (Fla. 1967).
[3] Oglesby v. State, 156 Fla. 481, 23 So.2d 558 (1945); Ailer v. State, 114 So.2d 348 (Fla.App.2d 1959); Sherman v. State, 255 So.2d 263 (Fla. 1971).
[4] Kite v. State, 126 Fla. 77, 170 So. 445 (1936); Foy v. State, 115 Fla. 245, 155 So. 657 (1934); Jordan v. State, 171 So.2d 418 (Fla.App.1st 1965); see, generally, 35 Fla.Jur., Witnesses, § 214 (p. 306).
[5] Gluck v. State, 62 So.2d 71 (Fla. 1952).